UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.    3:09-CR-93-TAV-CCS-1 |
| | ) | |
| DENNIS R. BOLZE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant believes himself entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A) [Docs. 164, 166]. However, as the government argues in opposition [Doc. 167], defendant has failed to exhaust his administrative rights, which is a mandatory prerequisite to considering the merits of his request and thus a basis for denial. Moreover, defendant's circumstances do not present extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A)(i). Therefore, even if the Court could consider defendant's motion for compassionate release, it would **DENY** it on the merits.[1]

---

[1]   The Court's previously-entered opinion [Doc. 171] denied defendant's request on exhaustion grounds alone and did not discuss defendant's reply [Doc. 170], which was entered on the same day as the Court's opinion. Defendant's reply raises a new exhaustion argument and provides additional documentation of his medical condition, and while the Court continues to believe defendant has failed to exhaust his administrative rights, it has decided to enter a new opinion that also addresses the merits of defendant's compassionate release motions. In that regard, this Memorandum Opinion and Order may be viewed as superseding the Court's previously entered Memorandum Opinion and Order [Doc. 171] addressing defendant's request for release.

## I. Background

The Court incorporates by reference its summary of the background of this case in its memorandum opinion ruling on defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 145]. However, for the purpose of the instant motion, it notes that defendant pled guilty in November 2009 to three counts of wire fraud, in violation of 18 U.S.C. § 1343, and three counts of money laundering, in violation of 18 U.S.C. § 1957 [Doc. 43 p. 1–2]. These charges arose out of defendant's execution of a fraudulent investment scheme through two Nevada corporations he owned and operated, Centurion Asset Management, Inc. ("CAM") and Advanced Trading Services, Inc. ("ATS") [Doc. 145 p. 2]. Defendant ultimately admitted that he received more than $21 million from investors, of which approximately $9.6 million was used to re-pay existing investors and $1.6 million was invested [*Id.*]. Defendant used the remaining funds to support his own lavish lifestyle [*Id.*].

After granting defendant a bifurcated sentencing hearing to permit an evidentiary hearing on defendant's unresolved objections to the Presentence Report ("PSR") and conducting "an exhaustive analysis of the 18 U.S.C. § 3553(a) factors," *United States v. Bolze*, 44 F. App'x 889, 890–91 (6th Cir. 2012), the Court sentenced defendant to 327 months' imprisonment [Doc. 94]. The Sixth Circuit subsequently upheld defendant's sentence on appeal, *Bolze*, 444 F. App'x at 890, and the Supreme Court denied defendant's petition for a writ of certiorari [Doc. 107].

The Court later dismissed defendant's motion for post-conviction relief under § 2255 [Doc. 146], and the Sixth Circuit denied defendant's application for a certificate of appealability [Doc. 152], while the Supreme Court denied defendant's petition for a writ of certiorari [Doc. 154]. The Sixth Circuit also denied defendant's application for authorization to file a second or successive § 2255 motion [Doc. 162].

Defendant has filed two motions to alter or amend the judgment [Docs. 157, 158] and a second motion for return of property [Doc. 155], which are currently pending, as well as a "Pro Se Urgent Motion for Compassionate Release" under 18 U.S.C. § 3582(c)(1)(A) [Doc. 164] and a supplementary motion [Doc. 166], which the Court considers here.

## II.     Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018 amended § 3582(c)(1)(A) to modify one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or after the lapse of thirty (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. § 3582(c)(1)(A). If the defendant surmounts this

3

preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . .

*Id.* Defendant apparently requests relief under § 3582(c)(1)(A)(i) [Docs. 164, 166].

## III. Analysis

Whether because § 3582(c)(1)(A)'s requirement of exhaustion of administrative rights is jurisdictional or because it is a mandatory statutory regime, the Court lacks authority to consider whether defendant is entitled to relief. The Court could deny defendant's motion on this basis alone. However, in the interest of eliminating some of the uncertainty and delay created by the COVID-19 pandemic, the Court will discuss the merits of defendant's motion, ultimately concluding that he fails to present extraordinary and compelling reasons for release.

## A.     The Preliminary Hurdle: Exhaustion of Administrative Rights

Defendant's failure to satisfy § 3582(c)(1)(A)'s exhaustion requirement[2] bars this Court's consideration of his motion on the merits.  Defendant states that he filed a request for a reduction in sentence with the warden on April 7, 2020 [Doc. 164 p. 7].  But, the warden responded to his request within thirty (30) days, denying it by letter dated April 10, 2020 [Doc. 166 p. 7].  The letter, which defendant attaches to his supplemental motion, states that defendant "may commence an appeal of this decision via the administrative remedy process by submitting [his] concerns on the appropriate form (BP-9) within 20 days of the receipt of this response."  *Id.*; *see also* 28 C.F.R. § 571.63(a) (describing inmate's ability to appeal denial of request by warden through Administrative Remedy Procedure).  Only a denial by the General Counsel or the Director of the BOP constitutes "a final administrative decision." § 571.63(b)–(c).  Defendant does not indicate that he has filed an appeal of the warden's denial, much less received a final denial from the General Counsel or BOP Director, so he has not exhausted his administrative rights.

And, while defendant argues that the statute permits a court to consider a defendant's motion for compassionate release if thirty (30) days have passed since the warden's receipt of such a request, regardless of whether the warden has already denied defendant's request [Doc. 170 p. 2–3], this cannot be right.  The structure of §

---

[2]   The Court uses "exhaustion requirement" throughout the opinion to refer to § 3582(c)(1)(A)'s instruction that a court may consider a motion by a defendant after the defendant has fully exhausted his administrative rights or after thirty (30) days have passed from the warden's receipt of a request to move on defendant's behalf for a sentence reduction, whichever is earlier.

5

3582(c)(1)(A) and the language "whichever is earlier" in § 3582(c)(1)(A) suggest that the exhaustion of administrative rights and the thirty-day waiting period function as twin paths to the same outcome: explicit or implicit denial of the defendant's request prior to judicial consideration. In other words, just as "full[] exhaust[ion of] all administrative rights" presents the court with a "final administrative decision," the lapse of thirty (30) days without a response from the warden represents an implicit administrative decision to deny the request. *See e.g.*, *United States v. Godofsky*, No. 5:16-59-1, 2020 WL 2188047, at *1–2 (E.D. Ky. May 6, 2020) (concluding court lacked jurisdiction to consider compassionate release motion where warden had denied defendant's request purportedly made under § 3582(c)(1)(A) and defendant had not appealed denial), and *United States v. Flenory*, No. 05-80955, 2020 WL 2124618, at *3 (E.D. Mich. May 5, 2020) (characterizing elapse of thirty (30) days as an implicit denial). By contrast, the warden's negative response to such a request represents an explicit denial, thus eliminating the elapse of thirty (30) days as a path to judicial review because this denial, unlike an implicit denial, can be appealed administratively. Because the warden responded to defendant's request before thirty (30) days elapsed, it appears that the Court's consideration of his request is foreclosed by § 3582(c)(1)(A)'s instruction that a court "may not modify a term of imprisonment" if defendant has not "fully exhausted all administrative rights."[3]

---

[3] The Court acknowledges, as defendant notes in his most recent filing [Doc. 170 p. 3], that another judge in this district reached a different conclusion on this issue. In that case, the court found that a defendant could satisfy the exhaustion provision by allowing the lapse of thirty (30) days "after submitting his request to the BOP," even where the BOP denied the request and defendant failed to appeal the decision prior to judicial review [*Id.* (citing *United States v. York*,

6

Defendant argues the Court should waive the exhaustion requirement [Doc. 164 p. 7; Doc. 166 p. 3], but the Court cannot waive a jurisdictional threshold to consideration of defendant's motion. When a statutory bar to suit is jurisdictional, "a litigant's failure to comply with the bar deprives a court of all authority to hear a case." *United States v. Wong*, 575 U.S. 402, 409 (2015). The Supreme Court has stated its hesitance to recognize statutory rules profligately as "jurisdictional prescriptions," rather than "nonjurisdictional claim-processing rules," while it has also insisted that it does not demand Congress "incant magic words" to render a prescription jurisdictional. *Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843, 1850 (2019). Still, Congress must "clearly state[] that a [prescription] count[s] as jurisdictional." *Id.* (quoting *Sibelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013)).

Beginning with the text of § 3582(c) then, *see, e.g., Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016), the Court notes that the statutory language unequivocally states that a court "may not modify a term of imprisonment once it has been imposed except" in three specific cases. § 3582(c)(1)–(2). These are (1) the circumstances discussed above under § 3582(c)(1)(A); (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of

---

Nos. 3:11-cr-76, 3:12-cr-145, 2019 WL 3241166, at *4 (E.D. Tenn. July 18, 2019))]. In support, the court cited to a district court opinion outside this circuit that reached this conclusion without analysis. *York*, 2019 2019 WL 3241166, at *5 (citing *United States v. Heromin*, No. 8:11-cr-550, 2019 WL 2411311, at *1 (M.D. Fla. June 7, 2019)). However, *York* reveals that reasonable minds may disagree as to whether motions for compassionate release become ripe for judicial review after thirty (30) days, even if the warden has denied defendant's request and defendant has yet to exhaust his administrative rights. For this reason, the Court will proceed to the merits of defendant's compassionate release request after addressing defendant's arguments regarding waiver of the exhaustion requirement.

the Federal Rules of Criminal Procedure"; and (3) in the case of a defendant sentenced to a term of imprisonment based on a retroactively lowered sentencing range. *Id.* The language of "may not" and "except" indicates that § 3582(c) grants the Court authority to modify a sentence only in the three listed circumstances. *See United States v. Williams*, 607 F.3d 1123, 1125 (6th Cir. 2010) ("Unless the basis for resentencing falls within one of the specific categories authorized by section 3582(c), the district court lack[s] jurisdiction to consider [the defendant's] request." (quoting *United States v. Smartt*, 129 F.3d 539, 541 (10th Cir. 1997))). Section 3582(c)(1)(A) states that the court "may reduce the term of imprisonment" "after" defendant has satisfied the exhaustion requirement; thus, the exhaustion requirement is a prerequisite to the court's exercise of its authority under § 3582(c)(1)(A). It follows that the Court lacks jurisdiction to reduce a term of imprisonment under § 3582(c)(1)(A) if defendant has not exhausted his administrative remedies because a court only has jurisdiction to reduce a sentence under § 3582(c) if the "basis for resentencing falls within one of the specific categories authorized" by that section, *Williams*, 607 F.3d at 1125, and a motion by defendant does not fall within § 3582(c)(1)(A) if defendant fails to satisfy part of that section's requirements. *Cf. id.* at 1125–26.[4]

---

[4] The Sixth Circuit concluded that the district court lacked jurisdiction to reach the resentencing question under § 3582(c) because defendant's sentence was not "based on a sentencing range that has subsequently been lowered by the Sentencing Commission," which § 3582(c)(2) requires, and it characterized the question of whether he satisfied this requirement as "jurisdictional." § 3582(c)(2)).

And, even if § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, it establishes a mandatory statutory exhaustion regime.[5]  While "judge-made exhaustion doctrines . . . remain amendable to judge-made exceptions," "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, 135 S. Ct. 1850, 1857 (2016).  Although § 3582(c)(1)(A) does not use identical mandatory language to that of the statutory provision discussed in *Ross*, where the statute stated that an inmate "shall" bring "no action" absent exhaustion of administrative remedies, § 3582(c)(1)(A)'s language of "may reduce" the sentence "after" similarly indicates that exhaustion must take place *before* the court has authority to reduce a sentence.  Like the statutory text examined in *Ross*, the language of § 3582(c)(1)(A) "suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances,'" with one exception.  136 S. Ct. at 1856.  In *Ross*, the "edict" contained the qualifier that administrative remedies must be "available," *id.*; here, the possibility that the warden might fail to respond within thirty (30) days of a request to move for a sentence reduction qualifies the exhaustion mandate.  § 3582(c)(1)(A).  Yet, "aside from that exception," such mandatory language "means a court may not excuse a failure to exhaust, even to take [special] circumstances into account."  136 S. Ct. at 1856.  Accordingly, the

---

[5]  As the government notes [Doc. 167 p. 9], nonjurisdictional, mandatory claim-processing rules are mandatory "in the sense that a court must enforce the rule if a party 'properly raise[s]' it." *Fort Bend*, 139 S. Ct. at 1849 (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)).  Here, the government has properly raised the exhaustion issue in its initial response to defendant's motion for a sentence modification [Doc. 167 p. 9].

9

court may not create an exception to § 3582(c)(1)(A)'s exhaustion requirement for the special circumstance of the COVID-19 epidemic.

As the government notes, the only federal appellate court yet to address the issue of waiving exhaustion found that § 3582(c)(1)(A)'s language is mandatory and thus "presents a glaring roadblock foreclosing compassionate release at this point." *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020).[6] And, most courts to examine the issue

---

[6] Some courts have suggested *Raia*'s conclusion that exhaustion is a prerequisite to considering reduction under § 3582(c)(1)(A) is dicta. *See, e.g., United States v. Hassan*, No. 18-20607, 2020 WL 1910151, at *3 (E.D. Mich. Apr. 20, 2020) (citing *Raia* and characterizing its conclusion regarding exhaustion as dicta). Although defendant has not raised this argument, the following criticism of this view is informative:

> The Court also disputes the characterization of *Raia*'s conclusion that failure to exhaust administrative remedies forecloses compassionate release as mere "dicta." As background, while serving a three-month sentence that was under appeal because the Government contended it was too lenient, the defendant-appellee (Raia) filed in the district court a motion for compassionate release. *Raia*, 954 F.3d at 596. The district court denied the motion on the grounds that the pending appeal divested it of jurisdiction. *Id.* Then, instead of appealing that decision, Raia "filed a motion asking [the Third Circuit] to decide his compassionate-release motion. Alternatively, he ask[ed the Third Circuit] to return jurisdiction to the District Court by dismissing the government's appeal without prejudice." *Id.*
>
> In seeking these alternative remedies, Raia relied on Fed. R. App. P. 3(a)(2), which notes: "An appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the court of appeals to act as it considers appropriate, including dismissing the appeal." The Third Circuit's conclusion that the exhaustion requirement was non-waivable was the entire basis for denying the defendant-appellant's alternative request that jurisdiction be returned to the district court to consider his motion for compassionate release. Specifically, after denying Raia's primary request, the Third Circuit also rejected his alternative request because the (alternatively) requested remand would be futile *because* Raia "failed to comply with § 3582(c)(1)(A)'s exhaustion requirement." *Id.* at 597. As the sole basis for denying an alternative request for relief, the Third Circuit's view regarding the conclusive effect of failing to satisfy the exhaustion requirement does not seem to be mere dicta.

10

in this circuit have agreed, whether because they have found the exhaustion requirement to be jurisdictional or because they deemed it a mandatory statutory prerequisite not amenable to judge-made exceptions. *See United States v. Edwards*, No. 3:13-cr-12-1, 2020 WL 1987288, at *3–11 (M.D. Tenn. Apr. 27, 2020) (collecting cases in the Sixth Circuit denying relief based on failure to satisfy the exhaustion requirement); *United States v. Black*, No. 5:18-CR-646-1, 2020 WL 1930149, at *2–3 (N.D. Ohio Apr. 21, 2020) (agreeing with the Third Circuit's reasoning and conclusion in *Raia*); *United States v. Cornett*, No. CR 7:10-2, 2020 WL 1912211, at *1–2 (E.D. Ky. Apr. 20, 2020) (finding the exhaustion language to be jurisdictional and mandatory); *United States v. Dougherty*, No. 2:18-CR-229-2, 2020 WL 1909964, at *2 (S.D. Ohio Apr. 20, 2020) (agreeing the exhaustion requirement is jurisdictional and collecting cases); *cf. United States v. Hassan*, No. 18-20607, 2020 WL 1910152, at *2–3 (E.D. Mich. Apr. 20, 2020) (agreeing the exhaustion requirement is "imposed by statute and thus is not subject to a judge-made exception" but reasoning that waiving the requirement in light of COVID-19 served congressional intent), and *Samy v. United States*, No. CR 16-20610-1, 2020 WL 1888842, at *2–3 (E.D. Mich. Apr. 16, 2020) (reasoning that exhaustion could be waived where the BOP had "already determined the issue" by denying six previous requests and appeals and where delay would "unduly prejudice" defendant due to COVID-19's rapid spread).

---

*United States v. Edwards*, No. 3:13-CR-00012-1, 2020 WL 1987288, at *10 n.6 (M.D. Tenn. Apr. 27, 2020).

11

Defendant cites several opinions by courts that waived § 3582(c)(1)(A)'s exhaustion requirement in the context of COVID-19, but these courts provided minimal analysis (if any) of the statutory text and uniformly relied on a Second Circuit precedent of dubious persuasive value in this context.[7] *See* [Doc. 166 p. 3–5 (citing *United States v. Sawicz*, No.

---

[7] In *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019), the Second Circuit noted that "[e]ven where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute," and it outlined three exceptions to the exhaustion requirement citing *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992). *Barr*'s persuasive authority is limited. First, the *Barr* court did not involve a statutory exhaustion requirement but a judge-made one, unlike § 3582(c)(1)(A). 925 F.3d at 116. Finding that the statute at issue, the Controlled Substances Act ("CSA"), did not require exhaustion, the Second Circuit nevertheless concluded that the district court properly required exhaustion and that three possible exceptions to the exhaustion principle did not apply. *Id.* Thus, even if the court intended to opine that these exceptions may apply where "mandated by statute"—and even if its authority controlled this court—that statement was dicta. If, instead, the Second Circuit intended to observe that a judicially-created exhaustion requirement that is consistent with a statute may be waived, then its opinion is merely irrelevant to the instant case. *See United States v. Alexander*, No. 1:17-cr-420, 2020 WL 2113180, at *1 (N.D. Ohio May 4, 2020) (suggesting that *Barr* stands for the proposition that "judge-made exhaustion requirements may be waived even when those requirements are consistent with a statute"). Unlike the statutorily-created exhaustion provision in § 3582(c)(1)(A), judge-made exhaustion doctrines "remain amenable to judge-made exceptions," *Ross*, 136 S. Ct. at 1857, so while it might have been acceptable to excuse compliance with the exhaustion requirement the Second Circuit recognized in the CSA, the permissibility of waiver of a judicially-created exhaustion requirement does not support waiver of a statutorily-created provision. *See United States v. Holden*, No. 3:13-cr-444, 2020 WL 1673440, at *9 (D. Ore. Apr. 6, 2020).

Second, reading *Barr* to permit judicially-created exceptions to a statutory exhaustion requirement conflicts with Supreme Court precedent, including the precedent the Second Circuit cited. The *Barr* court's exceptions discussion relied on *McCarthy v. Madigan*, which has been superseded by statute and which did not involve a statutorily-mandated exhaustion provision but an administratively-created one. 503 U.S. at 141; *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (recognizing that the Prison Litigation Reform Act of 1995 ("PLRA") superseded *McCarthy*). The *McCarthy* Court repeatedly indicated its analysis hinged on the absence of an applicable statutory provision requiring exhaustion. 503 U.S. at 142–43, 149, 152, 156 (noting "the general grievance procedure was neither required nor mandated by Congress," emphasizing that the Court only "evaluated the individual and institutional interests at stake" because Congress had "not *required* exhaustion," and stating that Congress could "design or require an appropriate administrative procedure for a prisoner to exhaust his claim for money damages"). Indeed, the Court stated that "[w]here Congress specifically mandates, exhaustion is required"; only "where Congress has not clearly required exhaustion" may "judicial discretion govern[]." 503 U.S. 140, 144. This reading of *McCarthy*, as permitting judge-made exceptions to exhaustion of

12

08-cr-287, 2020 WL 1815851 (E.D.N.Y. Apr. 10, 2020) (stating that statutorily-mandated exhaustion requirements are not absolute "where [exhaustion] would be futile, . . . where the administrative process would be incapable of granting adequate relief . . . [or] where pursuing agency review would subject [the person seeking relief] to undue prejudice" and finding that undue prejudice to defendant from the COVID-19 outbreak at FCI Danbury combined with his risk of complications if he contracted COVID-19 due to his hypertension justified waiver (quoting *Washington v. Barr*, 925 F.3d 109, 118–19 (2d Cir. 2019)), *Miller v. United States*, No. 16-20222-1, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020) (similar)]; *see also* [Doc. 164 (citing *United States v. Colvin*, No. 3:19-cr-179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (quoting list of exceptions from *Barr* and finding that all three exceptions applied given risk of contracting COVID-19 before exhausting her appeals, brief duration of remaining term of imprisonment (eleven (11) days), and potential for undue prejudice from "heightened risk of severe illness")].[8]

Because this defendant has not satisfied § 3582(c)(1)(A)'s exhaustion requirement, *see supra* p. 6, and because the Court lacks the authority to waive the exhaustion requirement, the Court may not modify his sentence under § 3582(c)(1).

---

administrative remedies only where no statute mandates exhaustion, comports with the Supreme Court's more recent holding in *Ross* and its admonition of the Fourth Circuit for adopting "an extra-textual exception originally formulated by the Second Circuit" to PLRA's exhaustion requirement. *Ross*, 136 S. Ct. at 1856 (citing *Blake v. Ross*, 787 F.3d 693, 698 (2015)).

[8] Defendant also cites *United States v. Brannan*, No. 4:15-cr-80-1, 2020 WL 1698392, at *1 (S.D. Tex. Apr. 2, 2020), in support of his waiver argument [Doc. 164 p. 8], but the court therein did not provide reasons for its grant of an emergency motion for a sentence reduction under § 3582(c)(1)(A).

13

## B. Extraordinary and Compelling Reasons for Sentence Reduction

However, even if the Court did have authority to consider defendant's motion, it would deny it because the Court does not find that extraordinary and compelling reasons warrant the requested sentence reduction. § 3582(c)(1)(A)(i). Complying with the mandate in 28 U.S.C. § 994(t), as authorized by § 994(a)(2)(C), the United States Sentencing Commission promulgated a general policy statement describing the circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A) and providing specific examples.[9] USSG § 1B1.13.

---

[9] Courts disagree as to whether § 1B1.13 applies to motions by defendants under § 3582(c)(1)(A), even though the policy statement refers only to motions by the Director of the Bureau of Prisons and has not been updated to reflect the First Step Act's amendment of § 3582(c)(1)(A). USSG § 1B1.13 historical n. (noting that the last amendment of this provision of the Guidelines was on November 1, 2018). Some courts have interpreted the policy statement to apply to § 3582(c)(1)(A) as amended by the First Step Act. *See, e.g.*, *United States v. Eberhart*, No. 13-cr-313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("In the absence of controlling authority on the applicability of U.S.S.G. § 1B1.13 to motions . . . filed by defendants, and in light of the limited statutory exceptions to the general rule of finality of judgment, the court follows the guidance of the Sentencing Commission limiting the scope of 'extraordinary and compelling reasons' that warrant compassionate release." (citing *Dillon v. United States*, 560 U.S. 817, 824 (2010)), *United States v. York*, No. 3:11-CR-76; 3:12-CR-145, 2019 WL 3241166, at *4 (E.D. Tenn. July 18, 2019) (discussing the "universal" application of § 1B1.13 and noting "the Court has no reason to believe that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider"), *United States v. McGraw*, No. 2:02-CR-18, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019) (similar), *United States v. Gutierrez*, No. CR 05-0217, 2019 WL 1472320, at *1–2 (D.N.M. April 3, 2019) (finding no "extraordinary and compelling reasons" where defendant failed to establish "serious deterioration in physical or mental health because of the aging process" under § 1B1.13 app. n. (1)(B)).

Other courts have held that the policy statement is inconsistent with the First Step Act, "which was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when BOP finds they are not appropriate." *See, e.g.*, *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) (holding that a court may consider extraordinary and compelling reasons other than those specified in § 1B1.13's application notes); *see also United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923 (S.D. Tex. June 17, 2019) (finding that § 1B1.13 "no longer fits with the statute and thus

14

Section 1B1.13 of the Federal Sentencing Guidelines provides a three-factor test for analyzing whether a sentence reduction is proper: after considering the § 3553(a) factors as applicable, the court may reduce a defendant's sentence if it determines as relevant here that (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement." USSG § 1B1.13.

The application notes for §1B1.13 provide additional guidance for applying the first prong of the test, describing four categories of circumstances that could present "extraordinary and compelling reasons." USSG § 1B1.13 cmt. n. 1. First, such circumstances could exist due to defendant's medical condition, if defendant is suffering from a terminal illness, such as metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia, or if defendant is suffering from a medical condition—specifically a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process—that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not

_____

does not comply with the congressional mandate that the policy statement must provide guidance on the *appropriate use* of sentence-modification provisions under § 3582").

The Court agrees with the reasoning of the former group of courts and the government [Doc. 167 p. 6 n.1] that applying the policy statement to motions filed by defendants, just as it applies § 1B1.13 to motions filed by the BOP, is proper absent any authoritative indication to the contrary.

expected to recover." *Id.* at n.1(A). Secondly, defendant's age could provide extraordinary and compelling circumstances if defendant is at least sixty-five (65) years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least ten (10) years or seventy percent (70%) of the term of imprisonment. *Id.* at n.1(B). Third and fourth, certain family circumstances could provide reason to grant a sentence reduction, as could another extraordinary and compelling reason as determined by the Director of the Bureau of Prisons. *Id.* at n.1(C)–(D).

Because any sentence reduction must be consistent with applicable policy statements, § 3582(c)(1)(A)(ii), the fact that defendant's reasons do not fall into any of these potential categories of extraordinary and compelling circumstances provides an additional basis to deny defendant's motion. § 3582(c)(1)(A)(ii).

Defendant argues first that a combination of factors provide extraordinary and compelling reasons; he points to his age (71), lengthy sentence (327 months), and his argument that nonretroactive amendments to the sentencing guidelines since his sentencing would result in a lower guideline range if he were resentenced today [Doc. 164 p. 3]. This argument is a no-go. Although defendant's age could provide a basis for a sentence reduction if defendant had also served at least ten (10) years or seventy percent (70%) of his imprisonment term, USSG § 1B1.13 cmt. n. 1(B), neither of those things is true [Doc. 94 (sentencing defendant on October 5, 2010, to 327 months' imprisonment)]. Moreover, the length of defendant's sentence and any possible disparity between his guideline range at sentencing and the guideline range to which he would be subject today do not represent

16

extraordinary and compelling circumstances under the policy statement. And, while defendant suggests in his reply [Doc. 170 p. 4] that the combination of factors he lists falls into the policy statement's "other reasons" bucket, § 1.13 cmt. n. 1(D), his argument stalls because only the "Director of the Bureau of Prisons" can determine that such "other reasons" exist. USSG § 1.13 cmt. n.1(D); *see also United States v. Girod*, No. 5:15-87, 2020 WL 1931242, at *2 (E.D. Ky. Apr. 21, 2020) ("By its plain language, Application Note 1(D)'s 'other reasons' determination is reserved for the Director of the BOP.").

Defendant's second argument that the COVID-19 pandemic presents extraordinary and compelling reasons considering his "poor and deteriorating" health and the prison clinic's alleged inattention to his medical needs also fails [Doc. 164 p. 4–5]. As the government reasons [Doc. 167 p. 14], the COVID-19 pandemic cannot present an extraordinary and compelling reason alone because the policy statement directs courts to consider individual reasons for compassionate release, not general threats to the prison population. § 1B1.13 n.1; *see also Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release").[10] On the other hand, a defendant's medical condition could provide an extraordinary and compelling reason under § 1B1.13

---

[10] *See also United States v. Binraymond*, No. 2:19-cr-196, 2020 WL 2110577, at *2 (S.D. Ohio May 4, 2020) (finding that defendant "failed to show that COVID-19 pose[d] a particular risk to him sufficient to constitute extraordinary and compelling circumstances" where he did not contend he suffered from a terminal illness or serious medical condition and where he had "produced no evidence indicating that the jail is not equipped to adequately address problems arising due to COVID-19"), and *United States v. Mungarro*, No. 07-2276, 2020 WL 1933816, at *2 (E.D. Mich. Apr. 22, 2020) ("The court will not release Defendant simply because she *may* contract COVID-19, and if she does, *may* experience more pronounced symptoms.").

17

n.1(A)(ii) if a defendant suffers from a chronic medical condition that the Centers for Disease Control has recognized as elevating the risk of becoming seriously ill from COVID-19. § 1B1.13 n.1(A)(ii); *see also* Groups at Higher Risk for Severe Illness, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 6, 2020) (hereinafter "Groups at Higher Risk"). A court could find that defendant's medical condition, heightened by risks posed by COVID-19, "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" and is one "from which he or she is not expected to recover," i.e. a chronic condition. § 1B1.13 n.1(A)(ii).

Defendant's medical conditions do not meet this standard. Defendant cites the Presentence Investigation Report ("PSR") in support of his contention that he has had two heart attacks resulting in congestive heart failure disease and has a history of hyperlipidemia, hypertension, cardiomyopathy, and migraine headaches; he also states that he was diagnosed with advancing kidney disease in 2016 and developed "a severe case of Gout requiring constant medication" in 2019 [*Id.* at 4]. Yet, the current medical conditions defendant lists are being managed by medication in line with CDC recommendations for reducing COVID-19-related risks or are not among those the CDC has recognized as heightening the risk of severe illness from COVID-19. *See* Groups at Higher Risk. Defendant states he is taking a medication for gout, two types of blood pressure medication, a cholesterol medication, and aspirin, which he presumably takes for migraine headaches [Doc. 164 Ex. D-2 p. 2; *see also* Doc. 170 p. 17]. The only apparently unmedicated

18

condition from which defendant suffers, his kidney disease, is not identified by the CDC as a risk-increasing condition, unless it requires dialysis, which defendant has not alleged. *See* Groups at Higher Risk; *see also* [Doc. 170 p. 16 (showing defendant's diagnosis with "chronic kidney disease, stage 3 (moderate)" as of March 30, 2020)]. Additionally, the fact that all the conditions defendant identifies, except the gout and kidney disease, were listed in the presentence investigation report in 2010 [Doc. 164 p. 4] tends to undermine defendant's claim that his health is "deteriorating" [*Id.*], especially given his doctor's generally positive assessment of his health as of March 30, 2020 [Doc. 170 p. 16].

As the government notes, an analysis under § 1B1.13 n.1(A)(ii) based on the COVID-19 threat logically includes consideration of whether an inmate is more likely to contract COVID-19 outside the prison facility than within it based on defendant's proposed release plan and COVID-19's spread at his facility [Doc. 167 p. 14–15]. *See Mungarro*, 2020 WL 1933816, at *2 (noting defendant failed to show "why any medical condition she ha[d] was] so exceptional that the court, must, in the interest of justice, release her into the general public, where, in fact, COVID-19 may be more prevalent (citing Cases in U.S., Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited Apr. 16, 2020)).

And, while defendant argues that the "unabated and advancing COVID-19 virus [is] spreading" at his facility, FCI Coleman Low [Doc. 164 p. 2], the latest numbers suggest the opposite. As the government highlights [Doc. 167 p. 15], the BOP reported one inmate and three staff members had tested positive for COVID-19 at FCI Coleman Low as of April

20, 2020. *United States v. Harris*, No. 2:17-cr-78, 2020 WL 1969951, at *1 (M.D. Fla. Apr. 24, 2020). That number has since decreased by two; as of May 6, 2020, the BOP reported one positive inmate and one positive staff member. COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 6, 2020). Notwithstanding defendant's attachment of multiple articles highlighting deficiencies in the BOP's response to COVID-19 and allegation that other federal prisons are not testing for the disease [Docs. 166, 168, 170], this low and apparently declining rate of infection at FCI Coleman Low suggests the BOP's substantial efforts to contain and prevent the spread of the virus are having an effect,[11] at least at this defendant's correctional facility.

While the Court agrees with defendant that one or more of his medical conditions, independently or in combination, may heighten his risk of suffering complications from COVID-19, he has failed to establish that he suffers from a chronic medical condition whose danger to his health, in combination with a COVID-19 infection, rises to the level required under the policy statement, i.e. "substantially diminish[ing his ability] to provide self-care within the environment of a correctional facility."[12] § 1B1.13 n.1(A). His list of

---

[11] BOP Implementing Modified Operations, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 6, 2020) (describing conditions under which BOP has been operating, including suspension of social visits, suspension of inmate movement with limited exceptions, use of screening protocols for staff and inmates, suspension of legal visits, suspension of official staff travel, suspension of all staff training, with the exception of basic training for new staff, screening procedures for contractors performing essential services, suspension of volunteer visits, suspension of tours, and implementation of modified operations to maximize social distancing); *see also* A BOP COVID-19 Overview, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited May 6, 2020).

[12] Defendant cites several decisions granting motions for compassionate release based on medical conditions in combination with the COVID-19 threat [Doc. 164 p. 5–6], but he only cites

20

current medications indicates he is following the CDC's prescriptions for lessening any heightened risk from contracting COVID-19 due to his previously-identified conditions; he has not alleged that he is unable to obtain these medications at FCI Coleman Low; and he has not offered any evidence that his chronic kidney disease is so advanced that COVID-19 would pose an exceptional risk to his health. Additionally, defendant has not demonstrated that remaining at FCI Coleman Low, as opposed to being released, heightens his risk of becoming seriously ill as a result of COVID-19. The number of cases at his facility is low and appears to be declining. For these reasons, the Court finds defendant has not demonstrated the COVID-19 threat substantially diminishes his ability to provide self-care while incarcerated. *See United States v. Black*, No. 5:18-cr-646-1, 2020 WL 1930149, at *3 (N.D. Ohio Apr. 21, 2020) (finding defendant failed to establish right to compassionate release because he claimed he suffered from high blood pressure and diabetes but "offer[ed] no proof, such as medical records, that would substantiate this claim"), and *United States v. Dickson*, No. 1:19-cr-251-17, 2020 WL 1904058, at *3 (N.D. Ohio Apr. 17, 2020) (similar); *see also United States v. Shah*, No. 16-20457, 2020 WL

---

opinions by district courts outside this circuit, which represent persuasive authority only. Furthermore, they are distinguishable for various reasons. *See, e.g.*, *United States v. Jepson*, No. 3:19-cv-73, 2020 WL 1640232, at *4–5 (D. Conn. Apr. 1, 2020) (admitting that "none of Mr. Jepsen's conditions fall within the existing guidance from the U.S. Sentencing Commission" but finding extraordinary and compelling reasons in totality of circumstances, including the brief length of defendant's remaining term (eight weeks), the fact that he is immunocompromised and suffers from multiple chronic conditions, and the government's consent to his release), *United States v. Williams*, No. 3:04-cr-95, 2020 U.S. Dist. LEXIS 63824, at *6–9 (N.D. Fla. Apr. 1, 2020) (finding extraordinary and compelling reasons because defendant satisfied § 1B1.13 n.1(B) (age), not n.1(A) (medical condition)), *United States v. Resnick*, No. 14-cr-810, 2020 WL 1651508, at *7 (S.D.N.Y. Apr. 2, 2020) (finding defendant fell into "other reasons" "catchall" under § 1B1.13 n.1(D) and implying defendant would be deserving of compassionate release during normal times).

21

1934930, at *2 (E.D. Mich. Apr. 22, 2020) (finding no extraordinary and compelling reasons where defendant's diagnosed conditions, diabetes and hypertension, were "not out of the ordinary" or "untreatable" and there were no confirmed cases of COVID-19 in defendant's facility); *cf. United States v. Saad*, No. 16-20197, 2020 WL 2065476, at *4, *6 (E.D. Mich. Apr. 29, 2020) (finding extraordinary and compelling reasons where seventy-one-year-old defendant suffered from chronic kidney disease, hypertension, pulmonary hypertension, sleep apnea, and possible bladder cancer and was detained in a facility with numerous COVID-19 cases, including his cellmate) (collecting cases granting compassionate release to individuals with heightened risk of complications from COVID-19).

Because defendant does not present reasons for release that qualify as extraordinary and compelling under the policy statement and thus under § 3582(c)(1)(A)(i), he would not be entitled to compassionate release if the Court reached the merits of his request.

## IV.    Conclusion

The Court lacks authority to consider defendant's request for a sentence reduction under § 3582(c)(1)(A) because he has failed to exhaust his administrative rights. Even if the Court did consider the merits of defendant's motion, however, it would deny the motion because defendant has not presented extraordinary and compelling reasons for release. Accordingly, defendant's motion and supplemental motion for compassionate release [Docs. 164, 166] are **DENIED**. Moreover, because defendant has not satisfied the statutory prerequisite for consideration of his compassionate release request, defendant's emergency

22

motion to appoint counsel to assist him with his compassionate release motion [Doc. 168]

is **DENIED as moot**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

23

Case 3:09-cr-00093-TAV-CCS   Document 172   Filed 05/13/20   Page 23 of 23   PageID #: 3335