UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  3:09-CR-093-TAV-CCS-1 |
| | ) | |
| DENNIS R. BOLZE, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>**MEMORANDUM OPINION AND ORDER**</u>

Defendant believes himself entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A) [Doc. 177]. The government essentially waives the threshold question of exhaustion [Doc. 193], permitting the Court to consider defendant's request on the merits. However, defendant's circumstances do not present extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A)(i), and even if they did, the sentencing factors set forth in 18 U.S.C. § 3553(a) militate against granting defendant's motion, so the Court must **DENY** it.

Also before the Court are numerous other pro se motions. For the reasons discussed herein, defendant's motion to appoint counsel [Doc. 175] is **DENIED** as moot; defendant's motion to proceed *in forma pauperis* [Doc. 176] is **DENIED** as moot; defendant's motion to order the government to produce certain documents [Doc. 181] is **DENIED**; defendant's motion for a ruling on his compassionate release motion [Doc. 183] is **DENIED** as moot; defendant's motion to supplement [Doc. 187] is **GRANTED**; defendant's motion to order

the government to respond [Doc. 196] is **DENIED** as moot; and defendant's motion for relief from judgment [Doc. 197] is **DENIED** as moot.

## I.     Background[1]

On November 10, 2009, defendant pled guilty to three (3) counts of wire fraud, in violation of 18 U.S.C. § 1343, and three (3) counts of money laundering, in violation of 18 U.S.C. § 1957 [Docs. 42, 43]. After conducting "an exhaustive analysis of the 18 U.S.C. § 3553(a) factors," *United States v. Bolze*, 44 F. App'x 889, 890–91 (6th Cir. 2012), the Court sentenced defendant to 327 months' imprisonment [Doc. 94], which he is currently serving at FCI Coleman Low.

According to the Bureau of Prisons, as of October 7, 2020, FCI Coleman Low currently has two (2) confirmed active COVID-19 cases amongst the inmates and twenty-three (23) amongst the staff. COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Oct. 7, 2020). One (1) inmate and one (1) member of the staff have died from the disease, while 217 inmates and eight (8) staff members have recovered. *Id.*

Defendant is seventy-one (71) years old and suffers from various medical conditions. According to a recent BOP medical report provided by the government [Doc. 201], defendant currently suffers from hyperlipidemia, essential hypertension, gout,

---

[1] The Court incorporates by reference its summary of the background of this case in its memorandum opinion ruling on defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 145] as well as its memorandum opinion ruling on defendant's prior motion for compassionate release [Doc. 172].

and chronic kidney disease, stage 3 (moderate). Medical records provided by defendant [Doc. 170 p. 12–43; Doc. 178-1 p. 5] also indicate that defendant has a history of, inter alia, pulmonary hypertension and cardiomyopathy.

On April 7, 2020, defendant sent a request for compassionate release to the warden of FCI Coleman Low, citing the risk to his health posed by the COVID-19 pandemic in light of his age and various medical conditions as the basis for his request [Doc. 164 p. 30–38]. The warden, finding defendant's "concern about being potentially exposed to, or possibly contracting COVID-19 does not currently warrant an early release from [his] sentence," denied defendant's request on April 10, 2020, three (3) days after receipt of the request [Doc. 166 p. 7].

On April 17, 2020, just ten (10) days after defendant's request to the warden, defendant filed his initial motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. 164]. Finding that defendant failed to exhaust his administrative rights—and that even if he had, he failed to present extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A)(i)—the Court denied the motion [Doc. 172]. *United States v. Bolze*, No. 3:09-cr-093, 2020 WL 2521273, at *1 (E.D. Tenn. May 13, 2020).

Then, on June 25, sixty-nine (69) days after defendant's request to the warden, defendant filed the instant motion requesting that the Court grant him compassionate

3

release [Doc. 177].[2]  The government has responded in opposition [Doc. 193].  The matter is now ripe for resolution.

## II.    Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute."  *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)).  The First Step Act of 2018 amended § 3582(c)(1)(A) to modify one such exception.  First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).  Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons.  Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative

---

[2]    Defendant had previously filed a motion to appoint counsel to assist him with a compassionate release motion [Doc. 175] and a motion to proceed *in forma pauperis* [Doc. 176].  And he later filed a supplement to the instant motion [Doc. 178], a reply to his motion to appoint counsel (notwithstanding the fact that the government had not yet responded) [Doc. 179], a reply to his motion for compassionate release (again notwithstanding the fact that the government had not yet responded), a "motion for the government to produce" all 'internal' memos issued since June 25, 2020 to and from all department heads and staff members concerning COVID-19 regarding the modification to totally lock down the three FCI Coleman correction facilities" [Doc. 181] and a supplement thereto [Doc. 182], a motion for a ruling on his compassionate release motion [Doc. 183], a second supplement to his compassionate release motion [Doc. 185], a sentencing memorandum [Doc. 184], a motion to supplement his compassionate release motion [Doc. 187], a motion for leave to proceed *in forma pauperis* [Doc. 188], motion to order the government to respond to his motion for compassionate release [Doc. 196] (notwithstanding the fact that the government had responded), a motion for relief from judgment [Doc. 197] and memorandum in support thereof [Doc. 198], and most recently, another memorandum in support of his motion for compassionate release [Doc. 202] and a reply to the government's response [Doc. 203].

4

rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of thirty (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. § 3582(c)(1)(A). If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id.* Defendant apparently requests relief under § 3582(c)(1)(A)(i).

## III.    Analysis

The Court will first consider defendant's motion for compassionate release [Doc. 177] and arguments set forth in his various other filings related thereto [*e.g.*, Docs. 178, 187-1, 198] before ruling on various other pro se motions by defendant [Docs. 175, 176, 181, 183, 187, 195, 197].

## A.    Section 3582(c)(1)(A)'s Preliminary Threshold to Relief: Exhaustion

The Court examines first whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement,[3] which is a mandatory prerequisite to consideration of a compassionate release request on the merits.  *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020).  "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'"  *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)).  The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture.  *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

As the Court has noted, the exhaustion requirement in § 3582(c)(1)(A) provides that before the Court may reduce a term of imprisonment pursuant to that section on a motion by the defendant either (1) the defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) thirty (30) days must have lapsed since "the receipt of such a request by the warden of defendant's facility."  § 3582(c)(1)(A).

First, as the Court previously determined in denying defendant's prior motion for compassionate release, defendant has not fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on his behalf.  *Bolze*, 2020 WL 2521273, at *2.  Defendant could have and apparently did not appeal the warden's denial,

---

[3]    The Court uses "exhaustion requirement" throughout the opinion to refer to § 3582(c)(1)(A)'s instruction that a court may consider a motion by a defendant after the defendant has fully exhausted his administrative rights or after the lapse of thirty (30) days since the warden's receipt of a request to move on defendant's behalf for a sentence reduction, whichever is earlier.

6

28 C.F.R. § 571.63(a), and only a determination by the General Counsel or the Director of the Bureau of Prisons constitutes a "final administrative decision" satisfying § 3582(c)(1)(A)'s requirement that defendant "fully exhaust[] all administrative rights to appeal." § 571.63(b)–(c); *see also* 18 U.S.C. § 3582(c)(1)(A). Accordingly, defendant has not fully exhausted his administrative rights.

Second, although the Court reads § 3582(c)(1)(A) to require a defendant to "fully exhaust[] all administrative rights" if the warden responds to a defendant's compassionate release request within thirty (30) days, *see Bolze*, 2020 WL 2521273, at *3 (citing *United States v. Godofsky*, No. 5:16-59-1, 2020 WL 2188047, at *1–2 (E.D. Ky. May 6, 2020), and *United States v. Flenory*, No. 05-80955, 2020 WL 2124618, at *3 (E.D. Mich. May 5, 2020)); *accord United States v. Haas*, No. 6:17-cr-037, 2020 WL 4593206, at *5 (E.D. Ky Aug, 7, 2020), the Court has acknowledged reasonable minds may disagree as to whether a motion automatically ripens after the passage of thirty (30) days from a defendant's request to the warden. *Bolze*, 2020 WL 2521273, at *3 n.3. And, although the Sixth Circuit has yet to encounter the issue presented here, it implied that it would read § 3582(c)(1)(A) to allow a defendant to file a motion after thirty (30) days had passed from the filing of a request with the warden, regardless of whether the warden had responded and regardless of the appeal status of a denial by the warden. *Alam*, 960 F.3d at 834 ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them.").

Applying these two interpretations of the thirty-day prong of the exhaustion requirement to the facts in this case leads to different conclusions. Interpreting the provision as this Court did in denying defendant's initial motion, *Bolze*, 2020 WL 2521273, at *3, the fact that defendant's April 7th request was denied by the warden on April 10, just three (3) days later and thus well within the thirty-day window, eliminates the lapse of thirty (30) days as a path to judicial review, requiring that defendant instead fully exhaust his administrative rights. 2020 WL 2521273, at *3. Whereas under the interpretation of the provision seemingly adopted by the Sixth Circuit in *Alam*, *but see Haas*, 2020 WL 4593206, at *5, defendant has satisfied the exhaustion requirement by waiting the requisite thirty (30) days since his April 7th request to the warden before filing the instant motion on June 25.[4]

But ultimately, because the government apparently concedes defendant has satisfied the exhaustion requirement [Doc. 193 p. 1], the Court need not enforce the exhaustion requirement here. Because § 3582(c)(1)(A) is a non-jurisdictional provision, the

---

[4] The Court notes that the government's interpretation of the thirty-day prong is inconsistent with *Alam* in one respect. The government states: "The Court has authority to consider Bolze's current motions because Bolze presented his claim for compassionate release to the Bureau of Prisons over 30 days ago" [Doc. 193 p. 1]. But the Sixth Circuit expressly rejected this interpretation of the thirty-day prong in *Alam*. 960 F.3d at 836. *Alam* clarified that satisfaction of this prong turns on the timing of the motion's filing, not whether the thirty-day window has "r[u]n its course" by the time a court considers a motion. *Id.* ("If (rather than dismissing) we sat on untimely compassionate release motions until the 30-day window ran its course, we could end up reviewing stale motions."). This distinction is not of consequence here, where defendant's motion is timely under *Alam* (i.e., filed after the passage of thirty (30) days since the warden's receipt of his request), which necessarily means that the thirty-day window had run its course by the time this Court considered defendant's motion.

8

government may waive enforcement of the exhaustion provision. Mandatory claim-processing rules are only mandatory "in the sense that a court must enforce the rule if a party 'properly raise[s]' it." *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). Thus, because the government apparently concedes that defendant has satisfied the exhaustion requirement, one of the exceptions to enforcing a mandatory claim-processing rules applies: the government has waived any objection to defendant's motion on exhaustion grounds. *See Alam*, 960 F.3d at 834 (citing *Cotton*, 535 U.S. at 630). The Court may therefore consider defendant's merits argument. *Cf. id.* (finding no waiver where the government "timely objected to Alam's failure to exhaust at every available opportunity").

### B. Whether Extraordinary and Compelling Reasons Justify Relief

While the Court has authority to consider defendant's motion on the merits, defendant fails to establish extraordinary and compelling reasons warranting the requested sentence reduction. *See* § 3582(c)(1)(A)(i).

Complying with the mandate in 28 U.S.C. § 994(t), as authorized by § 994(a)(2)(C), the United States Sentencing Commission promulgated a general policy statement describing the circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A) and providing specific examples. USSG § 1B1.13. Section 1B1.13 of the Federal Sentencing Guidelines provides a three-factor test for analyzing whether a sentence reduction is proper under § 3582(c)(1)(A): after considering the § 3553(a) factors as applicable, the court may reduce a defendant's

9

sentence if it determines as relevant here that (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement."  USSG § 1B1.13.

The application notes for § 1B1.13 provide additional guidance for applying the extraordinary-and-compelling-reasons prong of § 1B1.13's three-part test, describing four (4) categories of circumstances that could present "extraordinary and compelling reasons." USSG § 1B1.13 cmt. n.1.  First, such circumstances could exist due to defendant's medical condition, if defendant is suffering from a terminal illness, or if defendant is suffering from a medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  § 1B1.13 cmt. n.1(A).  Second, defendant's age could provide extraordinary and compelling circumstances if defendant is at least sixty-five (65) years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least ten (10) years or seventy-five percent (75%) of the term of imprisonment.  § 1B1.13 cmt. n.1(B).  Third, certain family circumstances could provide reason to grant a sentence reduction.  § 1B1.13 cmt. n.1(C).  Fourth, the Director of the Bureau of Prisons could identify "other reasons" for relief, some "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  § 1B1.13 cmt. n.1(D).

Defendant appears to argue that since the passage of the First Step Act, § 1B1.13 no longer constrains the Court's consideration of a compassionate release motion [Doc. 177 p. 6–8]. Rather, defendant seems to contend, courts may make an independent finding that extraordinary and compelling circumstances meriting relief exist, either by not applying § 1B1.13 or by stepping into the role of the BOP Director and applying subdivision D's so-called "catchall" provision [*Id.*].

Courts disagree as to whether § 1B1.13 applies to motions by defendants under § 3582(c)(1)(A) because the policy statement refers only to motions by the Director of the Bureau of Prisons and has not been updated to reflect the First Step Act's amendment of § 3582(c)(1)(A). USSG § 1B1.13 historical n. (noting that the last amendment of this provision of the Guidelines was on November 1, 2018). Some courts, including the Second Circuit, have held that the policy statement is inconsistent with the First Step Act, "which was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when BOP finds they are not appropriate." *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019); *see also United States v. Booker*, No. 19-3218-CR, 2020 WL 5739712, at *6 (2d Cir. 2020) ("[W]e read the Guideline as surviving [the enactment of the First Step Act], but now applying only to those motions that the BOP has made."); *United States v. Maumau*, No. 2:08-cr-758, 2020 WL 806121, at *3 (D. Utah Feb. 18, 2020); *United States v. Cantu*, 423 F. Supp. 3d 345, 349–52 (S.D. Tex. 2019). Other courts, however, have interpreted the policy statement to apply to § 3582(c)(1)(A) as amended by the First Step Act. *See, e.g.*, *United States v. Eberhart*,

11

No. 13-cr-313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *United States v. York*, Nos. 3:11-CR-76 & 3:12-CR-145, 2019 WL 3241166, at *4 (E.D. Tenn. July 18, 2019); *United States v. McGraw*, No. 2:02-CR-18, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019); *United States v. Gutierrez*, No. CR 05-0217, 2019 WL 1472320, at *1–2 (D.N.M. Apr. 3, 2019).

Courts have similarly disagreed as to whether courts can craft their own combination of "other [extraordinary and compelling] reasons" under subdivision D. *Compare United States v. Girod*, No. 5:15-87, 2020 WL 1931242, at *2 (E.D. Ky. Apr. 21, 2020) ("By its plain language, Application Note 1(D)'s 'other reasons' determination is reserved for the Director of the BOP."), *and United States v. Hickman*, No. 6:15-42, 2020 WL 2838544, at *2 (E.D. Ky. June 1, 2020) (finding that because the catchall provision provides that "other reasons" are to be "determined by the Director of the Bureau of Prisons," the Court has no authority to find "other reasons" beyond those listed in the policy statement), *with United States v. Young*, No. 2:00-cr-2-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (describing subdivision D's reference to the BOP Director as "a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act"), *and Miller v. United States*, No. 16-20222-1, 2020 WL 1814084, at *3–4 (E.D. Mich. Apr. 9, 2020) (finding that defendant presented "other reasons" for release where 69-year-old man suffered from a chronic lung disease, a serious heart condition, and liver disease, thus putting him at a high risk for contracting a severe case of COVID-19).

12

This Court has previously interpreted the policy statement to apply to § 3582(c)(1)(A) as amended by the First Step Act. *United States v. Barnes*, No. 3:13-CR-117, 2020 WL 3791972, at *5 (E.D. Tenn. July 7, 2020); *United States v. Nix*, No. 3:15-CR-36, Doc. 103 p. 12 (E.D. Tenn. June 29, 2020). Additionally, the Court announced its agreement with the reasoning of those courts that have found that applying the policy statement, including subdivision D, to motions filed by defendants, just as it applies § 1B1.13 to motions filed by the BOP, is proper absent any authoritative indication to the contrary. *Barnes*, 2020 WL 3791972, at *5; *Nix*, No. 3:15-CR-36, Doc. 103 p. 12. This Court reasoned: "The First Step Act created a way for defendants to obtain expedited judicial review of a compassionate release request; it does not follow that it changed the nature of that review." *Barnes*, 2020 WL 3791972, at *5 (citations omitted); *see also Nix*, No. 3:15-CR-36, Doc. 103 p. 15.

Defendant seems to suggest that the legislative histories of both § 3582(c) and the First Step Act support his expansive view of the court's authority to interpret "extraordinary and compelling reasons" without reference to the policy statement [Doc. 177 p. 6–8]. Yet, if the terms of a statute are unambiguous, determining the meaning of those plain terms "should be the end of the analysis." *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1743 (2020) (citing *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 135 (2d Cir. 2018) (Cabranes, J., concurring)). Here, defendant has identified no ambiguity in § 3582(c), the resolution of which might necessitate a resort to legislative history.

13

"[E]xtraordinary and compelling reasons" as the phrase is used in § 3582(c)(1)(A)(i) is not ambiguous but vague, and the phrase's statutory context dispels the vagueness. *See Ebbers*, 432 F. Supp. 3d at 427 (noting that USSG § 1B1.13 is "helpful in defining a vague standard"). First, looking to the text adjacent to § 3582(c)(1)(A)(i), § 3582(c)(1)(A) requires that any reduction under that provision be "consistent with applicable policy statements issued by the Sentencing Commission." Second, referencing related statutory provisions, 28 U.S.C. § 994(a)(2)(C) directs the Sentencing Commission, not the courts, to promulgate "general policy statements regarding . . . the sentencing modification provisions" in § 3582(c), and § 994(t) commands that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(a)(2)(C), (t). Notably, Congress enacted § 3582(c) and § 994(a)(2)(C) and (t) in the same piece of legislation, underlining that Congress intended these provisions to be read together. *See* Sentencing Reform Act of 1984, Pub. L. 98-473, §§ 212(a)(2), 217(a), 98 Stat. 1987, 1998–99, 2019, 2023 (1984); *see also Erlenbaugh v. United States*, 409 U.S. 239, 243–44 (1972) (noting that the rule of in pari materia, stating that a "legislative body generally uses a particular word with a consistent meaning in a given context," applies most strongly when "statutes were enacted by the same legislative body at the same time" and noting the related rule that "individual sections of a single statute should be construed together"). And, the First Step Act's addition of the language "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a

14

failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier" to § 3582(c)(1)(A) does not indicate congressional intent to overturn this statutory scheme. 132 Stat. at 5239.

Reading "extraordinary and compelling reasons" in its statutory context makes clear that the use of the phrase in § 3582(c)(1)(A) reflected an intentional congressional choice to give the authority to define those reasons to the Sentencing Commission. *See Hickman*, 2020 WL 2838544, at *2–3 (reasoning that these provisions support limiting authority to identify "extraordinary and compelling reasons" to the BOP Director). Thus, when some courts construe the First Step Act's modification to § 3582(c)(1)(A) as transferring the Sentencing Commission's definitional authority to the judiciary, they do so in contravention of the plain text of related statutory provisions that Congress chose not to modify. *See United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) ("This interpretation, and it appear[s] to be an interpretation gleaned primarily from the salutary purpose expressed in the title of Section 603(b) of the First Step Act, contravenes express Congressional intent that the Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the 'compassionate release' provision." (citing § 944(t)); *accord Ebbers*, 432 F. Supp. 3d at 427. They also disobey the Supreme Court's instruction that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United*

15

*States*, 508 U.S. 36, 38 (1993).  The commentary to § 1B1.13, including subdivision D, is not clearly inconsistent with defining "extraordinary and compelling reasons" in § 3582(c)(1)(A)(i), even if subdivision D might appear inconsistent with some courts' interpretations of the First Step Act's purpose.  *Cf. United States v. Saldana*, No. 19-7057, 2020 WL 1486892, at *3 (10th Cir. Mar. 26, 2020) (not deciding but indicating agreement that § 1B1.13 and subdivision D continue to bind courts' interpretation of "extraordinary and compelling" reasons post-First Step Act); *United States v. Avery*, No. 2:07-cr-20040-2, 2020 WL 3167579 at *5 (W.D. Tenn. June 9, 2020) (agreeing with courts that have found the policy statement and its application notes binding but also found that courts can consider "other reasons" for release).  Thus, the policy statement remains authoritative, and "[i]f [it] needs tweaking in light of [the First Step Act], that tweaking must be accomplished by the Commission, not by the courts." *Hickman*, 2020 WL 2838544, at *3 (quoting *United States v. Lynn*, No. CR 89-0072, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019)).

While plumbing legislative purpose is secondary to accurately construing the statutory text, the Court also notes that continuing to apply the policy statement, including subdivision D as written, is not inconsistent with the First Step Act's ostensible purpose of increasing the use of compassionate release.  *Cf. Beck*, 425 F. Supp. 3d at 579 (describing the First Step Act as being "enacted to further increase the use of compassionate release" (citing Pub. L. 15-391, Title VI § 603(b), 132 Stat. 5194 (Dec. 21, 2018) (captioned "Increasing the use and transparency of compassionate release"))).  As the *Hickman* court noted, "[t]he Act achieves this goal simply by granting defendants the ability to move for

16

compassionate release on their own," and many defendants' motions "invoke the specific provisions of the policy statement rather than the catchall provision." 2020 WL 2838544, at *2 (citing *Lynn*, 2019 WL 3805349, at *2).

Because any sentence reduction must be consistent with applicable policy statements, the fact that defendant's reasons do not fall into any of the four (4) categories of extraordinary and compelling circumstances justifies denying his motion.[5] § 3582(c)(1)(A)(ii).

### 1. Medical Condition of the Defendant

Defendant's first and principal argument is that COVID-19 poses a serious, possibly fatal, risk to him due to his age and various medical conditions [Doc. 177 p. 3–5; Doc. 183 p. 2–6]. But, as the government reasons, the COVID-19 pandemic does not fit into any of § 1B1.13's categories and thus does not provide a basis for a sentence reduction [Doc. 193 p. 10]. The policy statement directs courts to consider individual reasons for compassionate release, not general threats to incarcerated persons, much less a disease that "poses a threat to every person worldwide" [*Id.*]. *See* § 1B1.13 cmt. n.1; *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in

---

[5] Defendant does not argue or present facts suggesting his family circumstances constitute extraordinary and compelling reasons. *See* § 1B1.13 cmt. n.1(C). Nor does he allege that he suffers from a terminal illness. *See* § 1B1.13 cmt. n.1(A)(i). The analysis herein therefore addresses only whether defendant has shown extraordinary and compelling reasons exist under the circumstances set forth in USSG § 1B1.13 cmt. n.1(A)(ii), (B), and, notwithstanding the above, (D).

17

society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

On the other hand, as the government notes [Doc. 193 p. 10–13], a defendant's medical condition could provide an extraordinary and compelling reason under § 1B1.13 cmt. n.1(A)(ii) if a defendant suffers from a chronic medical condition that the Centers for Disease Control has recognized as elevating the risk of becoming seriously ill from COVID-19.  § 1B1.13 cmt. n.1(A)(ii)(I); *see also* People with Certain Medical Conditions, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated Sept. 11, 2020) (hereinafter "People with Certain Medical Conditions").  A court could find that a defendant's serious medical condition is one "from which he or she is not expected to recover," i.e. a chronic condition, and is one, heightened by risks posed by COVID-19, that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." § 1B1.13 cmt. n.1(A)(ii); *see, e.g.*, *Barnes*, 2020 WL 3791972, at *6 (finding the defendant's medical condition met this standard where the sixty-seven-year-old defendant suffered from three (3) serious chronic conditions that, according to the CDC, increased one's risk of severe illness upon contracting COVID-19, in addition to various other conditions, and was "'unable to sufficiently care for himself in prison,' forced to use a C-Pap machine to breathe while he sleeps and a container to use the restroom in the middle

18

of the night, confined to a wheelchair ninety percent (90%) of the time, and beholden to another inmate to help him sit down while he showers and to provide him basic care").

Defendant's medical condition does not meet this standard. First, defendant, who is seventy-one (71) years old, points to his age [Doc. 177 p. 3; Doc. 183 p. 4; Doc. 198 p. 11]. The CDC has advised that "[a]mong adults, the risk for severe illness from COVID-19 increases with age, with older adults at highest risk." Older Adults, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Sept. 11, 2020) (noting that "8 out of 10 COVID-19 deaths reported in the U.S. have been in adults 65 years old and older"). However, as the government notes, "age alone is not 'a serious physical or medical condition . . . that substantially diminishes [Bolze's] ability to provide self-care within the environment of a correctional facility'" [Doc. 193 p. 12 n.6].

Second, defendant cites the presentence investigation report ("PSR") and various medical records [*e.g.*, Doc. 178-1 p. 5] in support of his contention that he has had two (2) heart attacks resulting in congestive heart failure disease and suffers from hyperlipidemia, pulmonary hypertension, cardiomyopathy, chronic kidney disease, and obesity [Doc. 170 p. 12–43; Doc. 177 p. 4; Doc. 177-1 p. 2; Doc. 178 p. 2; Doc. 178-1 p. 5; Doc. 183 p. 2; Doc. 187-1 p. 1–2; Doc. 198 p. 5, 11]. Some of these medical conditions have been identified by the CDC as heightening the risk of severe illness from COVID-19 infection. *See* People with Certain Medical Conditions (listing chronic kidney disease, obesity (body

19

mass index of 30 or higher),[6] and serious heart conditions, such as heart failure, cardiomyopathies, or pulmonary hypertension, as medical conditions which place one at an increased risk of severe illness from COVID-19. But, as the government notes, "the only conditions that could plausibly constitute 'serious conditions . . . from which [defendant] is not expected to recover'" are those he is *currently* experiencing" [Doc. 193 p. 11–12], which the most recent medical records in the record reveal are hyperlipidemia, essential hypertension, gout, and chronic kidney disease [Doc. 201]. Of these medical conditions, only chronic kidney disease has been identified by the CDC as heightening the risk of severe illness from COVID-19 infection. *See* People with Certain Medical Conditions.

However, the Court also notes that defendant has not alleged that his various medical conditions are not being effectively managed by medication in line with CDC recommendations for reducing COVID-19-related risks [*see* Doc. 198 p. 9]. People with Certain Medical Conditions. Indeed, defendant's most recent medical report indicates that his hypertension is "controlled with medication" [*see* Doc. 170 p. 20] and his prescriptions

---

[6] With respect to defendant's claim that he is obese [Doc. 183 p. 2; *cf.* Doc. 177 p. 4; Doc. 178 p. 2], the Court notes that the provided medical records [Docs. 178-1 p. 5; Doc. 170 p. 12–43] are insufficient to establish this claim. Specifically, while defendant's medical records provide that, as of March 30, 2020, defendant weighs approximately 238 pounds [Doc. 170 p. 16], the Court finds no indication of defendant's current height in the record or a conclusion that defendant is presently obese, i.e., has a body mass index of thirty (30) or higher. *See* People with Certain Medical Conditions. And while defendant recalls that the PSR provides that he has a history of obesity [Doc. 177-1 p. 2], such is insufficient to establish that defendant is currently obese as the PSR was created in 2010, and the conclusion in the report that defendant has a history of obesity was apparently based on a record created in 2008 [*Id.*].

for an ACE inhibitor and other medications used in the treatment of serious heart conditions and chronic kidney disease were recently renewed [*Id.* at 17]. Additionally, the fact that all the conditions defendant identifies, except the kidney disease, were listed in the PSR in 2010 [Doc. 177 p. 4–5; Doc. 177-1 p. 2; *see also* Doc. 164 p. 4] tends to undermine any suggestion that defendant's health is "deteriorating" [Doc. 180 p. 3; *see also* Doc. 202 p. 11], especially given his doctor's generally positive assessment of his health earlier this year [Doc. 170 p. 16; *see also* Doc. 170 p. 13]. Thus, although some of the medical conditions with which defendant has been diagnosed have been identified as generally increasing one's risk of serious illness from COVID-19, defendant's particular conditions do not appear to be so advanced or uncontrolled that COVID-19 would pose an exceptional risk to his health like that contemplated by the policy statement. *See United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at * 2 (E.D. Mich. May 7, 2020) (holding that medically managed serious medical conditions and a generalized fear of COVID-19 fell short of extraordinary and compelling reasons).

Nor do defendant's serious chronic medical conditions "substantially diminish[] [his] ability . . . to provide self-care within the environment of a correctional facility." § 1B1.13 cmt. n.1(A)(ii). Courts have traditionally interpreted "the ability of the defendant to provide self-care" to mean one's ability to independently perform activities of daily living and provide basic personal care (e.g., use the toilet, shower, ambulate, eat, etc.). *See,*

21

*e.g.*, *United States v. Rodriguez*, 424 F. Supp. 3d 674, 682 (N.D. Cal. 2019) (finding the defendant's ability to provide self-care in the correctional facility was not substantially diminished where the defendant did not need assisted physical therapy and was capable of independently performing activities of daily living); *United States v. Willis*, 382 F. Supp. 3d 1185, 1187–88 (D.N.M. 2019) (finding the defendant's ability to provide self-care in the correctional facility was substantially diminished where the defendant was "wheelchair bound, blind, and require[d] 24/7 care"); *United States v. Lake*, No. 5:16-076, 2019 WL 4143293, at *1, 3 (E.D. Ky. Aug. 30, 2019) (finding defendant's ability to provide self-care in the correctional facility was not substantially diminished where the defendant's "activities of daily living [we]re unaffected by his medical conditions" as evidenced by the stability of his conditions with treatment and his lack of difficulty ambulating with the assistance of his cane); *United States v. Bellamy*, No. 15-165(8), 2019 WL 3340699, at *4 (D. Minn. July 25, 2019) (finding the defendant's ability to provide self-care in the correctional facility was substantially diminished where the defendant "need[ed] assistance using the toilet, getting dressed, bathing, transferring to his wheelchair from his bed, using the computer, obtaining meals, doing laundry, and obtaining his medication, among other activities" and was "confined to his bed or a wheelchair for more than 50% of his waking hours").

Here, although the medical conditions with which defendant has been diagnosed are generally serious, defendant's particular medical conditions do not appear to be so

advanced that he cannot carry out activities of daily living. For example, defendant does not allege, and his medical records do not indicate, that he cannot independently manage his medications, ambulate, or provide basic personal care. *See United States v. Stewart*, No. 1:08-cr-10049, 2020 WL 5607824, at *3 (W.D. Tenn. Sept. 18, 2020) (concluding that, while Parkinson's is a serious medical condition under § 1B1.13 cmt. n.1(A)(ii), the defendant's Parkinson's did not substantially diminish his ability to provide self-care given that, although he was formerly unable to stand to urinate due to his Parkinson's and his medical records contain reports of tremors, he ambulates independently, plays baseball, was medically cleared to work outside the facility's fence, and provided no evidence suggesting he could not provide for his personal needs); *United States v. McIver*, No. 5:17-cr-069, 2020 WL 3964714, at *3 (E.D. Ky. July 13, 2020) (finding that the defendant had not shown his medical conditions substantially diminished his ability to provide self-care within the correctional facility where he provided no evidence contradicting the warden's conclusion that "his condition was stable and he was able to independently attend to his activities of daily living"); *Barnes*, 2020 WL 3791972, at *6 (cited *supra* p. 17).

Defendant argues that "it is impossible for [him] to provide self-care through social distancing within the environment of an 'overcrowded' correctional facility" [Doc. 177 p. 10 (citing *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *5–6 (E.D. Mich. May 7, 2020)); *see also* Doc. 198 p. 4; Doc. 202 p. 8] where inmates allegedly have "the ability to 'roam freely' throughout the institution" [Doc. 178 p. 3–4; *see also*

23

Doc. 178-2 p. 2–9, 11–14; Doc. 183 p. 4–6; Doc. 198 p. 7–8; Doc. 202 p. 7], inmates and staff are not provided with CDC-approved equipment, namely masks [Doc. 177 p. 11–14], inmates are segregated and transferred in a manner contrary to BOP policies [Doc. 178 p. 4; Doc. 198 p. 7; Doc. 202 p. 7], and inmates from different housing units mingle while working for UNICOR [Doc. 178-2 p. 8–9], taking GED courses or examinations [Doc. 178-2 p. 4], and attending religious services [Doc. 178-2 p. 14].[7] But this argument reflects his misreading § 1B1.13 cmt. n.1(A)(ii). The subject of § 1B1.13 cmt. n.1(A)(ii) is an individual defendant's "serious physical or medical condition" and the provision instructs the Court to determine the extent of such a *condition*'s effect on a defendant's ability to provide self-care within a correctional facility. Defendant's argument reverses the provision's causal chain. The *environment of the correctional facility*, his argument goes, diminishes his ability to provide self-care through, for example, practicing social distancing and frequent handwashing for his medical conditions. Thus, a proper reading

---

[7] Defendant's arguments as to the issue of whether his ability to provide self-care is substantially diminished also include various allegations that the Bureau of Prisons' COVID-19 Action Plan is inadequate and evinces the Bureau's deliberate indifference to inmates' health and safety [Doc. 177 p. 11–14; Doc. 178 p. 6]. First, the Court notes that the Bureau of Prisons has an extensive, detailed protocol addressing social distancing and the quarantining and treatment of symptomatic inmates [*see* Doc. 193 p. 3–5]. BOP Implementing Modified Operations, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Oct. 7, 2020). And second, as the government notes [Doc. 193 p. 11 n.4], the proper forum to raise such allegations would seemingly be in a civil case, not post-conviction criminal proceedings under § 3582(c)(1)(A). *See, e.g.*, *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020) (involving a § 1983 deliberate indifference claim asserted by prisoners at FCI Elkton against the prison and BOP officials).

24

of the provision reveals that defendant's arguments on this point are misguided.[8]  *See*

*United States v. Kyger*, No. 19-cr-77, 2020 WL 4041459, at \*2 (D. Colo July 17, 2020).

---

[8]    The Court acknowledges that some district courts have determined, as defendant apparently argues, that "[t]he presence of COVID-19 . . . necessitates a more expansive interpretation of what self-care means."  *United States v. Gorai*, No. 2:18-cr-220, 2020 WL 1975372, at \*3 (D. Nev. Apr. 24, 2020) (quoting *United States v. Esparza*, No. 1:07-cr-294, 2020 WL 1696084, at \*2 (D. Idaho Apr. 7, 2020)); *cf. United States v. Diaz*, No. 1:16-cr-070, 2020 WL 5763816, at \*6 (E.D. Cal. Sept. 28, 2020) (finding that the defendant "had not persuasively argued that he is unable to provide self-care at FCI Lompoc—whether that means self-care in light of his blood clot condition or his ability to social distance and avoid contracting COVID-19 again" (citing *Gorai*, 2020 WL 1975372, at \*3)).  Proponents of this "expansive interpretation" find that a defendant's ability to provide self-care is diminished where prison conditions make certain precautionary measures to reduce COVID-19 related risks (e.g., "practicing effective social distancing and hygiene to minimize . . . risk of exposure") infeasible.  *United States v. Colvin*, 451 F. Supp. 3d 237, 241 (D. Conn. 2020); *e.g.*, *United States v. Perez*, 451 F. Supp. 3d 288, 293–94 (S.D.N.Y. 2020) ("Confined to a small cell where social distancing is impossible, [the defendant] cannot provide self-care because he cannot protect himself from the spread of a dangerous and highly contagious virus."); *United States v. Zukerman*, 451 F. Supp. 3d 329, 335–36 (S.D.N.Y. 2020); *United States v. McCall*, No. 3:18-cr-95, 2020 WL 2992197, at \*6 n.6 (M.D. Ala. June 4, 2020) (alternative holding) ("[I]n light of . . . the impossibility of social distancing in a correctional environment, [the defendant] will be unable to provide the self-care of social distancing to protect himself from reinfection." (citing *Perez*, 451 F. Supp. 3d at 293–94)); *United States v. Reddy*, No. 13-cr-20358, 2020 WL 2320093, at \*7 (E.D. Mich. May 11, 2020); *Amarrah*, 2020 WL 2220008, at \*5–6 (cited by defendant).

But, for the reasons discussed herein, this Court does not agree that a reasonable reading of § 1B1.13 cmt. n.1(A)(ii)'s "ability . . . to provide self-care" provision provides that it can be satisfied where certain *prison* conditions (e.g., close quarters [Doc. 177 p. 10]) diminish a defendant's ability to provide self-care (e.g., practicing social distancing to reduce risk of contracting COVID-19 [*Id.*]) for his chronic medical conditions.  Rather, the Court agrees with those district courts that, observing the more traditional interpretation of "self-care," have found that § 1B1.13 cmt. n.1(D)'s so-called "catchall" provision "seems a better fit for a devastating pandemic that subject particular individuals to grave outcomes."  *United States v. Lavy*, No. 17-20033, 2020 WL 3218110, at \*3 (D. Kan. June 15, 2020) (quoting *United States v. Jenkins*, No. 99-cr-439, 2020 WL 2466911, at \*5 (D. Colo. May 8, 2020)) (citing *United States v. Resnick*, No. 14-cr-810, 2020 WL 1651508, at \*7 (S.D.N.Y. Apr. 2, 2020)); *United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020)); *cf. McCall*, 2020 WL 2992197, at \*6 n.6, 7 (granting compassionate release for "other reasons" under § 1B1.13 cmt. n.1(D), namely the combination of "the failure of the BOP to correctly diagnose, monitor, and treat [the defendant]'s now life-threatening condition; the overwhelming number of COVID-19 cases at Forrest City-Low; and the overall inadequate resources at Forrest City-Low to treat [the defendant]'s condition while it manages its COVID-19 outbreak," but alternatively holding that "in light of . . . the impossibility of social distancing in a correctional environment, [the defendant] will be unable to provide the

25

Additionally, the Court notes that shifting the focus of § 1B1.13 cmt. n.1(A)(ii)'s self-care provision from an individual defendant's medical condition to the prison environment or prison policies is at odds with the policy statement's directive that courts consider individual reasons for compassionate release, as opposed to general threats to incarcerated persons. Indeed, to conclude that the policies and conditions at FCI Coleman Low that defendant cites substantially diminish his ability to provide self-care would be to conclude that all prisoners subject to those same policies and conditions also have a substantially diminished ability to provide self-care, and as one district court has aptly noted, "the Court must consider every prisoner individually and should be cautious about making blanket pronouncements that categories of prisoners . . . warrant compassionate release, even given the unique circumstances of the COVID-19 pandemic."[9] *United States v. Delgado*, No. 3:17-cr-242, 2020 WL 2542624, at *3 (N.D. Tex. May 19, 2020).

---

self-care of social distancing to protect himself from reinfection." (citing *Perez*, 451 F. Supp. 3d at 293–94)). Of course, as this Court has discussed, § 1B1.13 cmt. n.1(D), by its express terms, is reserved for the Director of the BOP. *See supra* p. 10–16.

[9] This same reasoning compels the Court to reject the government's position that defendant has shown extraordinary and compelling reasons for release under § 1B1.13 cmt. n.1(A)(ii) because the CDC has reassessed the risk COVID-19 poses to individuals with chronic kidney disease [Doc. 193 p. 12 & n.6 (noting that "the CDC originally opined that only those individuals with chronic kidney disease *requiring dialysis treatment* were at increased risk from COVID-19"); *cf.* Doc. 198 p. 5–6 (defendant's discussion of the DOJ's position with respect to the extraordinary-and-compelling-reasons prong)]. When taken to its logical conclusion, the government's reasoning suggests that there are extraordinary and compelling reasons justifying the release of *any* prisoner diagnosed with a medical condition identified by the CDC as increasing one's risk of serious illness from COVID-19, without regard for the prisoner's overall health, how well the prisoner's medical condition is well managed or controlled, or, notably, whether the prisoner can independently perform activities of daily living and provide basic personal care. *See* § 1B1.13 cmt. n.1(A)(ii). Such is precisely the kind of "blanket pronouncement[]" that entire categories of prisoners (e.g., those diagnosed with chronic kidney disease) warrant compassionate release that the Court must avoid when determining whether an individual prisoner has shown *extraordinary*

26

And although, in July 2020, FCI Coleman Low experienced an increase in the number of confirmed active cases amongst inmates and staff [Doc. 187-1 p. 2; *see also* Doc. 183 p. 4–5; Doc. 185 p. 2; Doc. 198 p. 9], which included, according to defendant, inmates formerly housed in his unit [Doc. 183 p. 5–6], the steps taken by the BOP at FCI Coleman Low have, at least at the present time, been successful in halting the spread of COVID-19 at the facility. Indeed, as of October 7, 2020, the number of current positive cases at FCI Coleman Low is down to just two (2) inmates and twenty-three (23) staff. *See* COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Oct. 7, 2020).

And, while defendant notes in his initial motion that some courts have granted compassionate release to inmates housed in facilities where there are no confirmed cases of COVID-19, perhaps in some circumstances due to a lack of adequate testing,[10] [Doc. 177 p. 15–18; Doc. 178 p. 6–8; Doc. 187-2 p. 4–11], the Court finds that "speculation as to whether COVID-19 will [again] spread through Defendant's detention facility, [FCI Coleman Low], whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."

and compelling reasons justifying the extreme remedy that is compassionate release. *Delgado*, 2020 WL 2542624, at *3.

[10] The Court notes that the BOP's reporting of the COVID-19 outbreak in July tends to undermine defendant's prior allegation that the BOP's report that there were no or few cases at FCI Coleman Low at an earlier time was "unreliable" [Doc. 177 p. 15] or that the testing being done at FCI Coleman Low is inadequate [Doc. 177 p. 16–17 (arguing that an OSHA complaint filed by corrections officers at the facility against the BOP "support the premise confirming no testing occurs at FC[I] Coleman Low").

27

*United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying motion for compassionate release where defendant's medical conditions were "not out of the ordinary," defendant did not claim they were "fatal or untreatable," and there were no confirmed cases of COVID-19 at defendant's facility); *United States v. Phillips*, No. 12-20372, 2020 WL 3071849, at *4 (E.D. Mich. June 10, 2020) (finding that "50-year-old man in fairly good health" with diabetes and hypertension "managed with prescription medications" did not present extraordinary and compelling reasons for release and noting that defendant's fear of contracting COVID-19 at FCI Loretto was speculative where there were no confirmed cases at the facility); *United States v. Gamble*, No. 3:18-cr-22-4, 2020 WL 1955338, at *4–5 (D. Conn. Apr. 23, 2020) (finding no extraordinary or compelling reasons where defendant suffering from diabetes did not claim or provide evidence that his diabetes was not being, and could not be controlled, by medication and where defendant had not demonstrated that BOP could not contain the spread of the virus at his facility or treat him if infected).

In sum, the Court finds that defendant has failed to establish that he suffers from a chronic medical condition whose danger to his health, in combination with a COVID-19 infection, rises to the level required under the policy statement, i.e. "substantially diminish[ing his ability] to provide self-care within the environment of a correctional facility." § 1B1.13 cmt. n.1(A)(ii).

### 2.    Age of the Defendant

Defendant next argues that his age constitutes an extraordinary and compelling reason justifying his release under USSG § 1B1.13 cmt. n.1(B) [Doc. 177 p. 5–6; Doc. 198 p. 10–12; Doc. 202 p. 10–11].  As the Court has noted, a defendant's age could constitute and extraordinary and compelling reason if defendant (i) is at least sixty-five (65) years old, (ii) is experiencing a serious deterioration in physical or mental health because of the aging process, and (iii) has served at least ten (10) years or seventy-five percent (75%) of the term of imprisonment.  § 1B1.13 cmt. n.1(B).

Defendant states that he is age seventy-one (71) and that he has served over ten (10) years of his term of imprisonment [Doc. 177 p. 5–6; *see also* Doc. 198 p. 4].  In support of his argument that he has served more than ten (10) years, defendant attaches a document titled "Sentence Monitoring Computation Data as of 6-17-2020," which provides that computation of defendant's 327-month sentence began on August 26, 2010, but that defendant received jail credits from March 12, 2009, to August 25, 2010, so his time served, as of the date listed on the report, is approximately eleven (11) years, three (3) months, and six (6) days [Doc. 177-1 p. 4–5].

But, even assuming the age and time-served elements of this provision are satisfied, defendant has still failed to show extraordinary and compelling reasons justifying his release under § 1B1.13 cmt. n.1(B) because he does not establish that he is experiencing a serious deterioration in physical or mental health because of the aging process.  True, defendant does argue that he suffers from various chronic medical conditions, but he does

29

not specifically explain how the aging process has resulted in a serious deterioration in his health as is required to establish extraordinary and compelling reasons under this particular provision.[11]

### 3. Other Reasons

Defendant also argues that "the combination of his medical conditions, [his] age, and the 'unforeseeable' pandemic" constitutes an extraordinary and compelling reason justifying his release under USSG § 1B1.13 cmt. n.1(D) [Doc. 177 p. 6–7]. As explained, the text of the Guidelines does not currently authorize the Court to find "other" extraordinary and compelling reasons. § 1B1.13 cmt. n.1(D). But, even if the Court could recognize some combination of extraordinary and compelling reasons that fall outside those specified by the policy statement, the reasons defendant cites are not extraordinary

---

[11] The case defendant cites in support of his argument that he has established extraordinary and compelling reasons justifying his release under § 1B1.13 cmt. n.1(B), *United States v. Williams*, No. 3:04-cr-95, 2020 WL 1751545, at *3 (N.D. Fla. Apr. 1, 2020), is distinguishable on this basis. There, the seventy-eight-year-old defendant established that his medical conditions were quite serious, including diagnoses of "severe coronary and peripheral vascular disease, congestive heart failure, left ventricular dysfunction, end-stage renal disease, hyperlipidemia, and prediabetes." *Id.* Additionally, the defendant had "experienced one remote myocardial infarction (*i.e.*, a heart attack) while in BOP custody, requiring him to undergo quadruple coronary bypass surgery as a result," *id.*, and had "an automatic implantable cardioverter-defibrillator . . . placed in his chest to continuously monitor his heart rhythm and deliver electric pulses to restore normal heart rhythm, as necessary." *Id.* In his motion, the defendant also reported a recent dramatic weight loss due to loss of appetite, passing out at work, and an inability to stand up to take a shower or walk over 100 yards without symptoms. No. 3:04-cr-95, Doc. 87 p. 16–17 (Mar. 19, 2020). Based on these facts, and in light of the government's concession that such a determination "would not be unreasonable," 2020 WL 1751545, at *3 n.12, the district court in *Williams* found that the defendant was "suffering from serious and progressively worsening medical conditions because of the aging process." *Id.* at *3.

and compelling.[12]  While defendant's age and chronic medical conditions increase his risk

of serious infection, these conditions are apparently being managed with medication and

have not advanced to a life-threatening stage [*see* Doc. 170].  Additionally, the remaining

_____

[12]  In addition to arguing that the combination of his medical conditions, age, and the COVID-19 pandemic justify his release, defendant also advances various other arguments in pursuit of relief under the so-called "catchall" provision.  For example, defendant again [*see* Doc. 164 p. 3; Doc. 170 p. 4] argues that nonretroactive amendments to the sentencing guidelines since his sentencing would result in a lower guideline range if he were sentenced today [Doc. 187-1 p. 4; Doc. 198 p. 26].  But the Court previously rejected this same argument in denying defendant's prior motion for compassionate release [Doc. 164].  *Bolze*, 2020 WL 2521273, at *7. The Court stated:

> [T]he length of defendant's sentence and any possible disparity between his guideline range at sentencing and the guideline range to which he would be subject today do not represent extraordinary and compelling circumstances under the policy statement.  And, while defendant suggests in his reply [Doc. 170 p. 4] that the combination of factors he lists falls into the policy statement's "other reasons" bucket, § 1.13 cmt. n. 1(D), his argument stalls because only the "Director of the Bureau of Prisons" can determine that such "other reasons" exist.  USSG § 1.13 cmt. n.1(D); *see also United States v. Girod*, No. 5:15-87, 2020 WL 1931242, at *2 (E.D. Ky. Apr. 21, 2020) ("By its plain language, Application Note 1(D)'s 'other reasons' determination is reserved for the Director of the BOP.").

*Id.*  For the reasons discussed herein, the Court continues to so opine.

Defendant also argues that "his substantial rehabilitation efforts constitute[] an extraordinary and compelling reason," pointing to his not having incurred an infraction in recent years, the reduction of his security classification, his participation in unspecified "programming," his serving as an instructor, and his present work in UNICOR [Doc. 187-1 p. 4; *see also* Doc. 164 p. 6].  But "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t); *see also* USSG § 1B1.13 cmt. n.3. While some district courts, *e.g.*, *United States v. Ledezma-Rodriguez*, No. 3:00-cr-071, 2020 WL 3971517, at *5–6 (S.D. Iowa July 14, 2020), have considered a defendant's rehabilitation *in combination with other factors* in granting compassionate release, here, the Court does not find that defendant's rehabilitation, in combination with the other points made by defendant, amount to an extraordinary and compelling reason justifying release.  Defendant's rehabilitative efforts, while commendable, are not extraordinary; rather, it is the Court's expectation that criminal defendants commit themselves to participating in the rehabilitation process, as this defendant has, during a period of incarceration.

term of defendant's sentence is significant (i.e., over ten (10) years),[13] distinguishing his case from those where defendants at a heightened risk of serious illness from COVID-19 were set to be released in a few days or months. Moreover, defendant's risk of infection at FCI Coleman Low does not appear, at the present time, to be significantly higher than it would be in the general population, and he has not shown that the BOP would be unable to treat him adequately if he were infected.

## C. Section 3553(a) Factors

Even assuming defendant had presented extraordinary and compelling reasons for relief, the factors set forth in 18 U.S.C. § 3553(a) militate against granting defendant's motion. Section 3582(c)(1)(A) directs the court to consider "extraordinary and compelling reasons" only "after considering" the § 3553(a) factors. The "overarching" inquiry under § 3553(a) is whether the sentence imposed is "sufficient, but not greater than necessary, to comply with the purposes" outlined in § 3553(a) paragraph (2). § 3553(a); *see also Pepper v. United States*, 526 U.S. 476, 491 (2011). To this end, § 3553(a) directs the Court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, any pertinent policy statement, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. § 3553(a); *see also Pepper*, 526 U.S. at 491.

---

[13] According to the Bureau of Prisons, defendant is currently scheduled for release on June 1, 2032. Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Oct. 7, 2020).

Defendant contends that the § 3553(a) factors justify reducing his sentence to time served [Doc. 177 p. 18–20; Doc. 183 p. 7–8; Doc. 184; Doc. 187-1 p. 4; Doc. 198 p. 16–23; Doc. 202 p. 15–23]. He points to his release plan, "age, record of good conduct, work history, faith[-]based studies, rehabilitation with the BOP, and health considerations" in arguing that any need to protect the public from future crimes is diminished [Doc. 177 p. 18–19; *see also* Doc. 187-1 p. 4; Doc. 183 p. 7 (citing Doc. 164 p. 6–7); Doc. 198 p. 17; Doc. 202 p. 17–19]. He laments the loss of "over a decade of his freedom and life" in arguing that a sentence of time served would provide adequate deterrence and also suggests that his release would allow him to educate others in the community on the cost of crime, which he claims "is now society's best deterrent to crime" [Doc. 177 p. 19; *see also* Doc. 198 p. 18; Doc. 202 p. 18]. He also argues that the need to provide him with medical care in the most effective manner has "dramatically shifted since sentencing" [Doc. 177 p. 19–20 (quoting *United States v. Young*, No. 19-5055, 2020 WL 2614745, at *4 (W.D. Wash. May 22, 2020)); *see also* Doc. 202 p. 19–20] due to the to COVID-19 pandemic placing "extreme stress" on the BOP's medical resources [Doc. 183 p. 7 (citing *Young*, 2020 WL 2614745, at *4; *United States v. Long*, No. 1:08-cr-043, Doc. 325 (N.D. Ga. July 21, 2020))]. This factor, defendant contends, should now carry "much greater weight" in the Court's consideration of the various sentencing factors [Doc. 177 p. 20; *see also* Doc. 198 p. 19]. He also notes the non-violent nature of his offenses [Doc. 198 p. 16].

The government's arguments as to the § 3553(a) analysis center on the amount of time defendant has served—just 138 months—of his 327-month sentence [Doc. 193 p. 13;

33

*see also* Doc. 203 p. 7–9] and the "severity of [defendant's] offense conduct" as evidenced by the impact of his crimes on numerous victims [*Id.* at 14], several of whom have submitted statements [Docs. 193-2–193-8], which the Court has reviewed.

The Court begins by noting as to the nature and circumstances of the offense that defendant plead guilty to three (3) wire-fraud charges and three (3) money-laundering charges, all arising out of his execution of a Ponzi scheme. 18 U.S.C. § 3553(a)(1). The Court also incorporates by reference the PSR's description of the facts as they relate to defendant's offense conduct [PSR ¶¶ 11–50; *see also* Doc. 92 p. 4–7], which it has reviewed. In particular, the Court notes that from in or about April 2002, and continuing through in or about December 2008, defendant perpetrated and carried out a scheme to defraud numerous individuals who invested funds with him and his corporations by soliciting millions of dollars of funds under false pretenses, failing to invest investors' funds as promised, and misappropriating and converting investors' funds to his own benefit without the knowledge and authorization of the investors [*Id.* ¶¶ 12–15]. *See Bolze*, 444 F. App'x at 890. Ultimately, defendant was ordered to pay $13,061,358.00 in restitution to numerous victims of his scheme [Doc. 94 p. 6–11; *see also* Doc. 92 p. 6–7, 29]. *See* § 3553(a)(7).

The Court incorporates by reference its discussion of defendant's history and characteristics at the time of his sentencing [Doc. 92 p. 7–8], *see* § 3553(a)(1), but it also highlights certain facts especially pertinent to the instant motion. The Court notes that defendant was sixty-one (61) at sentencing and that several of the medical conditions that

34

he points to in support of his request for compassionate release also afflicted him at that time, namely hyperlipidemia, hypertension, cardiomyopathy, obesity, and heart problems [PSR ¶¶ 94–97], which the Court acknowledged at sentencing [Doc. 92 p. 8]. *See* § 3553(a)(2)(D). However, according to a recent BOP medical report [Doc. 201], defendant's chronic kidney disease was not diagnosed until July 11, 2017, a fact that the government does not dispute. *See id.* Additionally, defendant's criminal history category at the time he was sentenced (category III) reflects a significant criminal history [Doc. 92 p. 7–8; PSR ¶ 87], including convictions for bank fraud and embezzlement [PSR ¶ 80], theft by unlawful taking [*Id.* ¶ 81], theft by deception [*Id.* ¶ 82], willful failure to remit sales taxes (three counts) [*Id.* ¶ 83], and failure to file tax returns (four counts) [*Id.* ¶ 84]. *See* § 3553(a)(1). Only the tax offenses resulted in any criminal history points [*Id.* ¶¶ 83, 84], but additional points were assessed due to defendant's being on probation at the time the instant offenses were committed [*Id.* ¶ 86]. *See id.*

Turning to the kinds of sentences available and the applicable guideline range, § 3553(a)(3), the Court notes that it imposed a sentence at the top of the guideline range, which was 262 to 327 months [*Id.* ¶ 106]. This sentence consisted of 240 months as to Counts One, Two, and Three, to be served concurrently; eighty-seven (87) months as to Count Four, to be served consecutively; and eighty-seven (87) months as to Counts Five and Six, to be served concurrently [Doc. 92 p. 29; Doc. 94 p. 3]. At sentencing, defendant requested a below-guidelines sentence on the grounds that he poses no danger to the public and that "he is over 60 years old, has been in jail for over a year, and that any term of

35

imprisonment within the Advisory Guideline range would in effect be a life sentence" [Doc. 92 p. 11]. The Court denied this request but took defendant's arguments into consideration in fashioning a sentence that complied with the § 3553(a) purposes [*Id.* at 12–27]. Additionally, the Court notes that, pursuant to the government's calculation, defendant has served 138 months of his 327-month sentence, representing just over forty percent (40%) of his sentence, as of late September [Doc. 193 p. 13].

Considering all the above in light of the purposes set forth in § 3553(a)(2), the Court finds that reducing defendant's term of imprisonment to time served would not produce a sentence that is "sufficient, but not greater than necessary." § 3553(a). The Court noted at sentencing and again here that defendant's offenses, while not violent in a traditional sense, deprived over 100 victims, most of whom were elderly, of their life savings, their peace of mind, and the money they had saved for retirement and their children's and grandchildren's educations, and thus were serious [Doc. 92 p. 16–24; *see also* Docs. 193-2–193-8]. *See* § 3553(a)(1), (a)(2)(A). And the Court continues to believe that the manner in which defendant carried out his offenses (i.e., keeping a Ponzi scheme going for over six (6) years), which required a great deal of thought, sophistication, and coordination, also indicates the seriousness of his offenses [Doc. 92 p. 17]. *See* § 3553(a)(2)(A). The Court also believes defendant's criminal history underlines the need to impose a sentence sufficient in defendant's case to promote respect for the law and protect the public from future crimes of the defendant. *See* § 3553(a)(2)(A), (C). Additionally, defendant has served only 138 months, or approximately forty percent (40%), of his 327-month sentence,

*see United States v. Kincaid*, 805 F. App'x 394 (6th Cir. 2020) (holding that district courts routinely, and appropriately, consider the percentage of time a person has served when assessing the sentencing factors set forth in 18 U.S.C. § 3553(a)), and granting defendant the requested sentence reduction would risk creating "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See* § 3553(a)(6). The Court acknowledges that there is a need to provide defendant with medical care, *see* § 3553(a)(2)(D), especially given the heightened risk of serious illness he would face if infected with COVID-19 due to his age and medical conditions.[14] But the Court considered defendant's arguments as to his age in the context of his request for a

---

[14] Defendant cites *United States v. Long*, No. 1:08-cr-043, Doc. 325 (N.D. Ga. July 21, 2020), and *United States v. Young*, No. 19-5055, 2020 WL 2614745, at *4 (W.D. Wash. May 22, 2020), in support of his argument that "the need to provide medical treatment in the most effective manner has dramatically shifted with the appearance of COVID-19" [Doc. 183 p. 7; *see also* Doc. 177 p. 19–20; Doc. 198 p. 21–28 (citing other similar cases)]. While these cases support the general proposition for which defendant cites them, they are distinguishable and provide minimal analysis, thus offering weak persuasive authority.

In particular, in *Long*, the district court granted an unopposed motion for compassionate release in a four-page order that contained no detailed discussion of the facts upon which the ruling was based and determined, in a conclusory fashion (i.e., without discussion of how defendant's medical conditions diminished his ability to provide self-care or how his health has seriously deteriorated because of the aging process) that defendant's circumstances were extraordinary and compelling under § 1B1.13 cmt. nn.1(A)(ii)(I) and 1(B). No. 1:08-cr-043, Doc. 325 p. 1–2.

Similarly, the district court in *Young* did not provide any discussion or analysis of the application notes for § 1B1.13. Thus, the court did not make clear within which category it found defendant's circumstances fell. Nor does it provide any indication of whether the court understood those categories to constrain the Court's consideration of a compassionate release motion at all. *Young* provides that the defendant's "age and underlying health issues, which place[d] him in a high-risk category for death if he contracts the virus," constituted extraordinary and compelling reasons, 2020 WL 2614745, at *3, but the opinion does not detail the severity defendant's medical conditions, whether those conditions were effectively managed by medication in line with CDC recommendations for reducing COVID-19-related risks, or how defendant's medical conditions may have diminished his ability to provide self-care.

37

sentence below the low end of the applicable guideline range and considered defendant's health and medical conditions, except, of course, his later-diagnosed kidney disease, when sentencing defendant to 327 months' imprisonment. Thus, despite his subsequent diagnosis with kidney disease (which the Court again notes is apparently being managed with medication and has not advanced to a life-threatening stage) and the threat of the COVID-19 pandemic, given the seriousness of defendant's offenses and the relatively small portion he has served of his sentence, the Court does not find that granting defendant's motion and reducing his sentence to time-served would result in a sentence that is sufficient but not greater than necessary to comply with the purposes set forth in § 3553(a)(2).

Because defendant does not present reasons for release that qualify as extraordinary and compelling under § 3582(c)(1)(A)(i), and because the factors set forth in 18 U.S.C. § 3553(a) militate against granting defendant's motion, defendant's motion for compassionate release [Doc. 177] is **DENIED**. Accordingly, the Court does not need to consider whether "the defendant is . . . a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" or whether "the reduction is [otherwise] consistent with this policy statement." USSG § 1B1.13.

### D.     Defendant's Other Motions

The Court finally turns to various other pro se motions filed by defendant. First, turning to his motion to appoint counsel to assist him in the filing of a motion for compassionate release [Doc. 175; *see also* Doc. 203 p. 2], the Court notes that the

38

constitutional right to assistance of counsel does not extend to motions for post-conviction relief. *Shedwick v. Warden N. Cent. Corr. Inst.*, No. 16-3203, 2016 WL 11005052, at *3 (6th Cir. Dec. 30, 2016) ("[T]here is no right to counsel in a post-conviction action."). And, no statutory authority establishes that a defendant is entitled to counsel for § 3582(c) proceedings. *See United States v. Harris*, 568 F.3d 666, 669 (8th Cir. 2009) (holding that defendant was not entitled to appointment of counsel in his § 3582(c)(2) proceedings and "agree[ing] with the six circuits that have held that there is no right to appointed counsel in sentence modification proceedings under § 3582(c)" (citing *United States v. Young*, 555 F.3d 611, 615 (7th Cir. 2009); *United States v. Olden*, 296 F. App'x. 671, 673 (10th Cir. 2008) (unpublished); *United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000); *United States v. Townsend*, 98 F.3d 510, 512–13 (9th Cir. 1996); *United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995); *United States v. Reddick*, 53 F.3d 462, 465 (2d Cir. 1995); *Evans v. United States*, 46 F.3d 1135, No. 94-2779, 1995 WL 46553 (8th Cir. 1995) (per curiam) (unpublished)); *cf. United States v. Johnson*, Nos. 15-6413 & 16-5346, 2016 WL 10704239, at *3 (6th Cir. Nov. 21, 2016) (declining to decide whether defendant was entitled to relief under § 3582(c)(2) where "independent review of the record reveal[ed] no issues of arguable merit" but noting that "[h]istorically, there has been no such right").

In support of his motion to appoint counsel, defendant states that he cannot "establish the facts necessary" [Doc. 175 p. 3] to show he is entitled to relief "under the current situation" [*Id.* at 5]. Specifically, he argues that he cannot provide evidence of his chronic medical conditions under the restrictions imposed as a result of the BOP's COVID-

39

19 Action Plan, which he claims restricts all internal movement, including access to the law library [*Id.* at 3]. Notwithstanding the fact that defendant somewhat contradicts these assertions in later filings [*see, e.g.*, Doc. 178 p.4 (discussing inmates' ability to "roam freely" throughout FCI Coleman Low)], the Court finds, having carefully reviewed defendant's various filings related to his request for compassionate release, that defendant was able to adequately present his legal and factual arguments for release and provide evidence establishing that he suffers from chronic medical conditions, even if his claim ultimately fails on the merits. Moreover, the Court's holding does not depend on the validity of the government's assertion in its prior response that defendant alleges is misleading [Doc. 175 p. 4 (arguing that the government's assertion that, based on the BOP's website, COVID-19 cases "appear to be declining" was inaccurate)]. Thus, the Court does not find that defendant has identified any considerations of fundamental fairness that might justify appointing counsel in this case. *See Legree*, 205 F.3d at 730 (concluding that "fundamental fairness" did not require appointed counsel to assist defendant with his § 3582(c) motion); *see also United States v. Drayton*, No. 10-20018-01, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020) (denying motion to appoint counsel related to motion for compassionate release and noting that compassionate release claims are not particularly complex factually or legally and that defendant appeared able to adequately present his claim). For this reason, defendant's motion to appoint counsel [Doc. 175] is **DENIED**.

Second, because the above rulings render defendant's motion to proceed *in forma pauperis* [Doc. 176] moot, that motion is likewise **DENIED**.

Third, because the disposition of defendant's motion for compassionate release is provided herein, defendant's motion for a ruling on his compassionate release motion [Doc. 183] is moot and is therefore **DENIED**.

Fourth, because the government has responded to defendant's motion for compassionate release [*see* Doc. 193], mooting defendant's motion to order the government to respond [Doc. 196], that motion is also **DENIED**.

Fifth, the Court has considered and addressed defendant's arguments set forth in his motion for relief from judgment [Doc. 197], the express purpose of which was to "consolidate [defendant's] prior filings and their attached exhibits into a more concise document" [Doc. 198 p. 2; *see also* Doc. 202 p. 2]. Thus, this motion is likewise moot and is accordingly **DENIED**.

Sixth, defendant's motion to order the government to produce "all 'internal' memos issued since June 25, 2020 to and from all department heads and staff members concerning COVID-19 regarding the modification to totally lock down the three FCI Coleman correction facilities" [Doc. 181] is also **DENIED**. Defendant offers no authority for this Court to order the production of such documents, and this Court's Local Rules require that requests for relief include "a concise statement of the factual and legal grounds which justify the ruling sought from the Court." E.D.TN. LR 7.1(b). As such, this request can be denied for failure to comply with the Local Rules. Alternatively, the request can be

41

deemed waived.  *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones." (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997))).  Furthermore, because the Court's holding that defendant is not entitled to compassionate release would not depend, even if true, on defendant's "allegations of COVID-19 . . . spreading throughout the facility unabated" [Doc. 181 p. 2], the requested materials seemingly would not assist defendant in showing his entitlement to such relief.  For these reasons, the motion is denied.

Lastly, defendant's motion to supplement his motion for compassionate release [Doc. 187] is, for good cause shown, and in light of the lack of objection, **GRANTED**. The Court has considered the arguments advanced in defendant's supplement [Doc. 187-1] and addressed the arguments relevant to the Court's analysis herein.  *See supra* p. 18–19 (addressing defendant's heart conditions and the risk to his health in light of the COVID-19 pandemic), 25–26 (addressing defendant's arguments related to a COVID-19 outbreak at FCI Coleman Low), 29 n.12 (rejecting defendant's § 1B1.13 cmt. n.1(D) "catchall" arguments related to his rehabilitation and nonretroactive amendments to the sentencing guidelines), 30–36 (discussing the various § 3553(a) factors).

## IV. Conclusion

Although the Court has authority to consider defendant's request for a sentence reduction under § 3582(c)(1)(A) due to the government's waiver of the exhaustion requirement, it will deny the motion because defendant has not presented extraordinary and compelling reasons for release and the § 3553(a) factors do not support a sentence reduction. Accordingly, defendant's motion for compassionate release [Doc. 177] is **DENIED**.

For the reasons discussed herein, defendant's motion to appoint counsel [Doc. 175] is **DENIED** as moot; defendant's motion to proceed *in forma pauperis* [Doc. 176] is **DENIED** as moot; defendant's motion to order the government to produce certain documents [Doc. 181] is **DENIED**; defendant's motion for "final disposition" [Doc. 183] is **DENIED** as moot; defendant's motion to supplement [Doc. 187] is **GRANTED**; defendant's motion to order the government to respond [Doc. 196] is **DENIED** as moot; and defendant's motion for relief from judgment [Doc. 197] is **DENIED** as moot.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE