UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:09-CR-93-TAV-DCP |
| DENNIS R. BOLZE, | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

Before the Court is defendant's third pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) [Doc. 222], as supplemented by counsel [Doc. 241] and additional pro se filings [Docs. 228, 232, 233, 246, 247]. The United States opposes defendant's motion [Doc. 244]. As discussed below, defendant's motion will be **DENIED** because he has not presented extraordinary and compelling reasons for his release and the 18 U.S.C. § 3553(a) factors weigh against a sentence reduction.

Also before the Court are defendant's "Emergency Request" [Doc. 248] for disposition of his compassionate release motion and motion to substitute counsel [Doc. 249], both of which will be **DENIED**.

**I.  BACKGROUND**

On November 10, 2009, defendant pled guilty to three counts of wire fraud, in violation of 18 U.S.C. § 1343, and three counts of money laundering in violation of 18 U.S.C. § 1957 [Docs. 42, 43]. Based on its "exhaustive analysis of the 18 U.S.C.

§ 3553(a) factors," *United States v. Bolze*, 44 F. App'x 889, 890–91 (6th Cir. 2012), the Court sentenced defendant to a total term of imprisonment of 327 months [Doc. 94].

In April 2020, defendant filed his first motion for compassionate release [Doc. 164]. The Court denied the motion because it found that defendant had not met the mandatory exhaustion requirement and because defendant had failed to demonstrate extraordinary and compelling reasons warranting a sentence reduction [Doc. 172]. Defendant filed his second motion for compassionate release [Doc. 177] in June 2020. The Court denied the motion because it found that defendant had failed to show extraordinary and compelling reasons warranting a sentence reduction, and even if he had, the § 3553(a) factors militated against granting him relief [Doc. 205].

Defendant now seeks compassionate release for a third time [Doc. 222]. He bases his claim for relief on various arguments, including his health conditions amid the COVID-19 pandemic, his rehabilitative efforts, and his belief that his sentence is excessive. Defendant is presently housed at Coleman Low FCI, in the Coleman Federal Correctional Complex. *See* Inmate Locator, Bureau of Prisons, https//www.bop.gov.inmateloc/ (last visited May 25, 2022). According to the Bureau of Prisons ("BOP"), his projected release date is June 1, 2032. *Id.*

## II. LEGAL STANDARD

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d

323, 326 (6th Cir. 2010)). Section 3582(c)(1)(A)(i) of Title 18, United States Code authorizes district courts to consider defendant motions for sentence reduction based on "extraordinary and compelling reasons."

Before seeking compassionate release from the court, a defendant must first "exhaust the BOP's administrative process" or wait "thirty days after the warden has received the compassionate release request—whichever is earlier." *United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020). Exhaustion of administrative remedies is a "mandatory condition" for defendant-filed motions for compassionate release. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). However, because the administrative exhaustion requirement operates as a "claim processing rule," it may be waived or forfeited by the government. *Id*. at 833–34.

If the exhaustion requirement has been met, a court may grant a motion for compassionate release if (1) "extraordinary and compelling reasons merit a sentence reduction," (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the court has "considered the factors . . . in 18 U.S.C. § 3553(a), to the extent that they apply." § 3582(c)(1)(A). However, when the defendant, rather than the BOP, files a motion for compassionate release, the court "may skip step two of the [Section] 3583(c)(1)(A) inquiry" and has "full discretion to define 'extraordinary and compelling circumstances' without consulting the policy statement in [U.S.S.G.] § 1B1.13.'" *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020). A motion for

compassionate release may be denied when any one of the substantive requirements is not met. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

## III. ANALYSIS

### A. Exhaustion

Defendant shows that he filed a request to be considered for compassionate release with the BOP on April 19, 2021 [Doc. 222-4, pp. 2–7], and his request was denied on April 20, 2021 [*Id.* at 8]. Thus, the Court finds that it has authority under § 3582(c)(1)(A) to address the merits of defendant's motion.

### B. Merits

#### 1. Extraordinary and Compelling Reasons

First, Defendant contends that his health conditions amid the COVID-19 pandemic constitute extraordinary and compelling reasons for relief [Doc. 222, pp. 23–26, 40–42]. Defendant is 73 years old [Doc. 245, p. 1] and currently suffers from chronic stage 3 kidney disease, hypertension, hyperlipidemia, and obesity, as documented in medical records from BOP [*Id.* at 2, 30]. Of defendant's conditions, the CDC has concluded that kidney disease and obesity "can" increase the risk of serious complications from COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 25, 2022). The same is "possibly" true for hypertension. *Id*.

The Court acknowledges that defendant's conditions may make him more vulnerable to COVID-19 related complications. However, defendant's health does not

4

appear to be deteriorating. All the conditions he identifies, except the kidney disease, were noted in his Presentence Investigation Report ("PSR") from 2010. Defendant claims that BOP does not adequately monitor his health [Doc. 222, p. 41; Doc. 232, p. 7], but does not contest BOP's classification of him as a Care Level 2 patient [*see* Doc. 244-1]. Care Level 2 patients are stable outpatients whose chronic conditions can be managed through routine appointments. *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited May 25, 2022) [Doc. 222, p. 41].

Further, COVID-19 appears to be well controlled at defendant's prison. According to the BOP, Coleman Low FCI currently has zero inmate cases and zero staff cases of COVID-19. *COVID-19: Coronavirus*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 25, 2022). While a future outbreak of COVID-19 at defendant's prison remains a possibility, that possibility alone does not justify a sentence reduction. *See United States v. Shah*, No. 16-20457, 2020 U.S. Dist. LEXIS 73313, at *4–5, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[Speculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."). Further, at Coleman FCC (which encompasses Coleman Low FCI), 851 staff and 5297 inmates are vaccinated. *COVID-19: Coronavirus*, Bureau of Prisons, http://bop.gov/coronavirus/ (last visited May 25, 2022). Defendant was offered the

COVID-19 vaccine and declined [Doc. 245, p. 35].[1] In light of the facts discussed above, the Court cannot conclude that defendant's medical conditions combine with the COVID-19 pandemic to create an extraordinary and compelling basis for release.[2]

Defendant also cites his rehabilitative efforts as a basis for relief [Doc. 222, pp. 36–39]. Defendant shows, among other accomplishments, that he has completed educational courses, tutored other inmates, and maintained an excellent disciplinary record [*See* Doc. 222-4, pp. 10–26]. However, as the Court noted previously, "Defendant's rehabilitative efforts, while commendable, are not extraordinary." [Doc. 205, p. 31.] "[R]ather, it is the Court's expectation that criminal defendants commit themselves to participating in the rehabilitation process, as this defendant has, during a period of incarceration" [*Id.*] *See also* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release. 28 U.S.C. § 994(t)).[3]

Last, defendant raises various arguments that his sentence is excessive. Primarily, he argues that the Court should recalculate his criminal history points from his PSR based

---

[1] Defendant indicated to medical staff that the reason for his refusal was a serious allergic reaction he had to another vaccine [Doc. 56]. In his court filings, defendant also claims that he declined to take the vaccine due to religious reasons [*See, e.g.*, Doc. 248, pp. 2, 35 n. 22].

[2] In addition, defendant claims that he suffers mental anguish from prison conditions during the COVID-19 lock-down [*See, e.g.,* Doc. 222, pp. 23–25]. However, as the government has pointed out, all federal inmates have faced similar restrictions. [*See* Doc. 244, pp. 10–11].

[3] Defendant also argues that he is not a risk to recidivate due to his age and being banned from participation in the financial markets [Doc. 222, pp. 40, 42–44]. However, due to defendant's age at the time he committed his offenses, and the ingenuity he showed in defrauding his victims, the Court finds these arguments unpersuasive.

6

on his claim that one of his tax convictions was uncounseled [Doc. 222, pp. 7–23; Doc. 232, pp. 3–6]. Defendant raised this argument in his purported Rule 36 motion [Doc. 218], which the Court denied [Doc. 234, pp. 2–3], and in his 28 U.S.C. § 2255 post-conviction relief motion [Doc. 110], which the Court also denied [Doc. 145, pp. 37–38]. Not only has the Court already found that defendant's claim lacks merit, his challenge to the accuracy of his PSR is not an argument for the Court to address in a compassionate release motion. *See United States v. Toaz*, No. 20-1561, 2020 U.S. App. LEXIS 33439, at *5–6 (6th Cir. Oct. 22, 2020) ("a compassionate release motion is not the proper vehicle for arguments that were or could have been raised on direct appeal or in a § 2255 motion, let alone for defendants . . . who already have completed a § 2255 proceeding and who are subject to the restrictions on filing second or successive § 2255 motions.").

Defendant also asks the Court to consider nonretroactive sentencing amendments as an extraordinary and compelling factor in his favor [*See* Doc. 222, pp. 28–29, 45; Doc. 232, pp. 6–7]. A nonretroactive change in sentencing law cannot, by itself, constitute an extraordinary and compelling circumstance justifying compassionate release. *See, e.g. United States v. Wills*, 997 F.3d 685 (6th Cir. 2021) (no extraordinary and compelling circumstances where defendant argued that if he were sentenced today, his sentencing enhancement would be obviated by the First Step Act of 2018[4]). The Sixth Circuit is currently divided regarding whether a nonretroactive change in the law may be considered extraordinary and compelling in combination with other factors. *See United States v.*

---

[4] Pub. L. No. 115-391, 132 Stat. 5194.

7

*McKinnie*, 24 F.4th 583, 588–89 (6th Cir. 2022) (nonretroactive changes in the law cannot be considered at all when court reviews extraordinary and compelling circumstances); *United States v. Hunter*, 12 F. 4th 555, 564 (6th Cir. 2021) (holding that "nonretroactive changes in the law, whether alone or in combination with other personal factors are not 'extraordinary and compelling reasons' for a sentence reduction"); *United States v. Wood*, 2022 WL 515661, at *2 (6th Cir. Feb. 11, 2022) (holding that a district court did not abuse its discretion in denying motion for reconsideration on compassionate release "because non-retroactive changes in the law cannot present extraordinary and compelling reasons for compassionate release"); *but see United States v. McCall*, 20 F.4th 1108, 1116 (6th Cir. 2021) ("[A] court may consider a nonretroactive change in the law as one of several factors forming extraordinary and compelling circumstances."). Nonetheless, even if the Court could consider nonretroactive guideline amendments here in combination with other factors, the Court would not find that defendant has presented extraordinary and compelling circumstances.

Having considered the factors discussed above, and all of defendant's other arguments, the Court finds that defendant has not shown extraordinary and compelling circumstances warranting compassionate release.

### 2.  18 U.S.C. § 3553(a) Factors

Even if the Court were to find that defendant has shown extraordinary and compelling reasons for compassionate release, the 18 U.S.C. § 3553(a) factors do not

8

support a sentence reduction, for reasons discussed previously. Under 18 U.S.C. § 3553(a), the Court considers the following factors in determining the sentence to be imposed:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
>    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
> . . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; . . .

In its order denying defendant's second motion for compassionate release, the Court analyzed the § 3553(a) factors and found that they militated against a sentence reduction:

> The Court begins by noting as to the nature and circumstances of the offense that defendant plead guilty to three (3) wire-fraud charges and three (3) money-laundering charges, all arising out of his execution of a Ponzi scheme. 18 U.S.C. § 3553(a)(1). The Court also incorporates by reference the PSR's description of the facts as they relate to defendant's offense conduct [PSR ¶¶ 11–50; *see also* Doc. 92 p. 4–7], which it has reviewed. In particular, the Court notes that from in or about April 2002, and continuing through in or about December 2008, defendant perpetrated and carried out a scheme to defraud numerous individuals who invested funds with him and his corporations by soliciting millions of dollars of funds under false pretenses, failing to invest investors' funds as promised, and misappropriating and converting investors' funds to his own benefit without the knowledge and authorization of the investors [*Id.* ¶¶ 12–15]. *See Bolze*, 444 F. App'x at 890. Ultimately, defendant was ordered to pay $13,061,358.00 in restitution to numerous victims of his scheme [Doc. 94 p. 6–11; *see also* Doc. 92 p. 6–7, 29]. *See* § 3553(a)(7).

9

The Court incorporates by reference its discussion of defendant's history and characteristics at the time of his sentencing [Doc. 92 p. 7–8], *see* § 3553(a)(1), but it also highlights certain facts especially pertinent to the instant motion. The Court notes that defendant was sixty-one (61) at sentencing and that several of the medical conditions that he points to in support of his request for compassionate release also afflicted him at that time, namely hyperlipidemia, hypertension, cardiomyopathy, obesity, and heart problems [PSR ¶¶ 94–97], which the Court acknowledged at sentencing [Doc. 92 p. 8]. *See* § 3553(a)(2)(D). However, according to a recent BOP medical report [Doc. 201], defendant's chronic kidney disease was not diagnosed until July 11, 2017, a fact that the government does not dispute. *See id.* Additionally, defendant's criminal history category at the time he was sentenced (category III) reflects a significant criminal history [Doc. 92 p. 7–8; PSR ¶ 87], including convictions for bank fraud and embezzlement [PSR ¶ 80], theft by unlawful taking [*Id.* ¶ 81], theft by deception [*Id.* ¶ 82], willful failure to remit sales taxes (three counts) [*Id.* ¶ 83], and failure to file tax returns (four counts) [*Id.* ¶ 84]. *See* § 3553(a)(1). Only the tax offenses resulted in any criminal history points [*Id.* ¶¶ 83, 84], but additional points were assessed due to defendant's being on probation at the time the instant offenses were committed [*Id.* ¶ 86]. *See id.*

Turning to the kinds of sentences available and the applicable guideline range, § 3553(a)(3), the Court notes that it imposed a sentence at the top of the guideline range, which was 262 to 327 months [*Id.* ¶ 106]. This sentence consisted of 240 months as to Counts One, Two, and Three, to be served concurrently; eighty-seven (87) months as to Count Four, to be served consecutively; and eighty-seven (87) months as to Counts Five and Six, to be served concurrently [Doc. 92 p. 29; Doc. 94 p. 3]. At sentencing, defendant requested a below-guidelines sentence on the grounds that he poses no danger to the public and that "he is over 60 years old, has been in jail for over a year, and that any term of imprisonment within the Advisory Guideline range would in effect be a life sentence" [Doc. 92 p. 11]. The Court denied this request but took defendant's arguments into consideration in fashioning a sentence that complied with the § 3553(a) purposes [*Id.* at 12–27]... Additionally, the Court notes that, pursuant to the government's calculation, defendant has served 138 months of his 327-month sentence, representing just over forty percent (40%) of his sentence, as of late September [Doc. 193 p. 13].

Considering all the above in light of the purposes set forth in § 3553(a)(2), the Court finds that reducing defendant's term of imprisonment to time served would not produce a sentence that is "sufficient, but not greater than

10

necessary." § 3553(a). The Court noted at sentencing and again here that defendant's offenses, while not violent in a traditional sense, deprived over 100 victims, most of whom were elderly, of their life savings, their peace of mind, and the money they had saved for retirement and their children's and grandchildren's educations, and thus were serious [Doc. 92 p. 16–24; *see also* Docs. 193-2–193-8]. *See* § 3553(a)(1), (a)(2)(A). And the Court continues to believe that the manner in which defendant carried out his offenses (i.e., keeping a Ponzi scheme going for over six (6) years), which required a great deal of thought, sophistication, and coordination, also indicates the seriousness of his offenses [Doc. 92 p. 17]. *See* § 3553(a)(2)(A). The Court also believes defendant's criminal history underlines the need to impose a sentence sufficient in defendant's case to promote respect for the law and protect the public from future crimes of the defendant. *See* § 3553(a)(2)(A), (C). Additionally, defendant has served only 138 months, or approximately forty percent (40%), of his 327-month sentence, *see United States v. Kincaid*, 805 F. App'x 394 (6th Cir. 2020) (holding that district courts routinely, and appropriately, consider the percentage of time a person has served when assessing the sentencing factors set forth in 18 U.S.C. § 3553(a)), and granting defendant the requested sentence reduction would risk creating "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See* § 3553(a)(6). The Court acknowledges that there is a need to provide defendant with medical care, *see* § 3553(a)(2)(D), especially given the heightened risk of serious illness he would face if infected with COVID-19 due to his age and medical conditions. But the Court considered defendant's arguments as to his age in the context of his request for a sentence below the low end of the applicable guideline range and considered defendant's health and medical conditions, except, of course, his later-diagnosed kidney disease, when sentencing defendant to 327 months' imprisonment. Thus, despite his subsequent diagnosis with kidney disease (which the Court again notes is apparently being managed with medication and has not advanced to a life-threatening stage) and the threat of the COVID-19 pandemic, given the seriousness of defendant's offenses and the relatively small portion he has served of his sentence, the Court does not find that granting defendant's motion and reducing his sentence to time-served would result in a sentence that is sufficient but not greater than necessary to comply with the purposes set forth in § 3553(a)(2).

[Doc. 205, pp. 34–38].

11

The Court finds no reason to revise its analysis here. The seriousness of defendant's criminal conduct, as well as his criminal history,[5] continues to militate against his release. While defendant has now served approximately 155 months of his 327 month sentence, there is still a significant percentage of his sentence remaining. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). After considering the applicable § 3353(a) factors and all evidence of record before the Court, the Court finds that a sentence reduction in this case would not result in a sentence that is sufficient but not greater than necessary, as required by § 3553(a)(2).

## IV. OTHER MOTIONS

Defendant's "Emergency Request" [Doc. 248], in which he requests a ruling on his compassionate release motion, will be **DENIED** as moot.

Defendant's request to substitute counsel [Doc. 249] will also be **DENIED**. Pursuant to the Court's Standing Order No. 19-04, defendant was appointed counsel to represent him on his compassionate release motion [Doc. 231]. Defendant now expresses dissatisfaction with his attorney's participation in his case and asks that a different attorney

---

[5] Defendant has prior convictions for bank fraud and embezzlement (1973), theft by unlawful taking (1976), and theft by deception (1978) [PSR ¶¶ 80–82]. He committed the instant offense while on probation for willful failure to remit sales tax (1999) and failure to file a tax return (2001) [*Id*. ¶¶ 83–84].

12

be appointed to him [Doc. 249]. The Court notes that there is no constitutional right to counsel in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S. Ct. 1990 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (holding that the constitutional right to counsel does not extend to collateral proceedings). A district court has discretion, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of justice so require." In exercising that discretion, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

The compassionate release arguments presented to the Court in this case are straightforward and familiar, not beyond the capability of an ordinary pro se litigant. Also, defendant's current counsel has timely filed a supplement on defendant's behalf [Doc. 241]. Accordingly, defendant's request for new counsel is **DENIED**.

## V. CONCLUSION

For the reasons set forth above, defendant's motion for compassionate release [Doc. 222], as supplemented [Docs. 228, 232, 233, 241, 246, 247], and his motion to substitute counsel [Doc. 249] are **DENIED**. Defendant's "Emergency Request" [Doc. 248] is **DENIED** as moot.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE

13